**James B. KING, Director, Office of Personnel Management, Petitioner,**

**v.**

**Phillip G. HILLEN and Merit Systems Protection Board, Respondents.**

No. 92–3601.

United States Court of Appeals, Federal Circuit.

April 13, 1994.

---

Ross D. Cooper, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for petitioner. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and James M. Kinsella, Asst. Director. Also on the brief was Steven E. Abow, Sr. Atty., Office of the General Counsel, Washington, DC, of counsel.

Edward H. Passman, Passman & Kaplan, Washington, DC, argued for respondent Phillip G. Hillen. With him on the brief was Joseph V. Kaplan. Patricia A. Price, Atty., Merit Systems Protection Board, argued for the Merit Systems Protection Bd. With her on the brief were Llewellyn M. Fischer, Gen. Counsel, Mary L. Jennings, Deputy Gen.

Counsel, David C. Kane, Asst. Gen. Counsel and Calvin M. Morrow, Atty.

Before NEWMAN, MICHEL, and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

The Office of Personnel Management, acting through its Director, appeals the decision of the Merit Systems Protection Board [1] that certain conduct of Phillip G. Hillen did not constitute "hostile environment" sexual harassment. The Board and Mr. Hillen defend the decision. We vacate the decision of the Board, and remand for redetermination on the correct law.

I

BACKGROUND

In 1985 Phillip G. Hillen, senior civilian manager at the Army's Military Traffic Management Command, was removed from service by the Command, based on a series of incidents involving five women who were military and civilian personnel at the Command. The Notice of Proposed Removal, by Brigadier General Donald C. Smith, recited the charges in some detail, and stated:

> 2. I propose to remove you because you have sexually harassed female members of this Command. This misconduct occurred during work hours and in work places. As a result, your actions had the effect of unreasonably interfering with the work performance of the individuals involved and created an intimidating and offensive work environment.

The Notice of Proposed Removal referred to Mr. Hillen's position of authority and his relationship of trust within the Command, and stated:

> Your conduct is not only a grave departure from the fundamental responsibilities of your position but is also a direct violation of widely publicized and long standing Army and Command policies regarding sexual harassment.

The charges were, in brief, as follows: that Mr. Hillen improperly touched Captain Nan-

---

1. *Hillen v. Department of the Army,* 54 M.S.P.R. 58 (1992) (Hillen IV).

cy Daugherty on her buttocks and thigh (the coffee pot incident), that on another occasion he touched her breast (the elevator incident), that he made a suggestive comment to her on the telephone, and often looked at her body in a sexually suggestive manner; that Mr. Hillen repeatedly touched Ms. Geneva Byars in an unwelcome manner, directed sexual innuendos to her, and told dirty jokes in her presence; that he was "unusually attentive" to Ms. Jan Ingerski, repeatedly asked her out for a drink after work, and looked at her in a sexually suggestive manner; that he took an unusual interest in Ms. Cynthia Schaefer and her career, often standing very close to her and looking at her body in a sexually suggestive manner; and that he looked at Ms. Georgia Parkinson in a sexually suggestive manner, made remarks having sexual overtones, and occasionally touched her shoulder. Three of the women (Captain Daugherty, Ms. Byars, and Ms. Ingerski) had complained to their supervisors or other agency officials, expressing anger, intimidation, or discomfort.

Mr. Hillen, in oral and written responses to the Notice, denied the charged incidents or disputed their significance. He stated that his actions may have been misunderstood, and that there was neither intended nor colorable sexual harassment, or would not have been from the viewpoint of a reasonable woman.

Investigations of the charges were conducted by the Office of Inspector General and by the Army. The deciding official, Major General Small, concluded that "sexual harassment did occur, in violation of Army, OPM, and EEOC regulations." The Notice of Decision quoted the EEOC Guideline definition of sexual harassment and stated that this regulation, 29 C.F.R. § 1604.11, "forms the basis for the various Office of Personnel Management (OPM), Department of Defense and Army prohibitions on sexual harassment." Major General Small stated that Mr. Hillen was a "high level employee from whom the Army has the right to expect strict compliance with agency regulation", and concluded that removal was the appropriate remedy.

Mr. Hillen appealed to the Merit Systems Protection Board, in accordance with 5 U.S.C. § 7543(d). There ensued several Board proceedings, summarized as follows:

### Hillen I

#### A

The first of three proceedings before the administrative judge (then called the "presiding official") took place in 1985. After hearing the Army's evidence, the administrative judge granted Mr. Hillen's motion for summary judgment.

The administrative judge characterized the charges as mostly based on "speculation, gossip and hindsight." He found that the touching of Captain Daugherty's breast (the elevator incident) was inadvertent. He deemed it significant that Captain Daugherty did not complain to any official about the various incidents until a year after their commencement, when she told her supervisor that she was afraid to be alone with Mr. Hillen and complained to the Inspector General. Concerning Ms. Byars, the administrative judge found that Ms. Byars could not specifically remember any of the dirty jokes told by Mr. Hillen, and did not complain directly to Mr. Hillen. Concerning Ms. Ingerski, Ms. Schaefer, and Ms. Parkinson, the administrative judge found that Mr. Hillen made no sexual overtures, that the incidents occurred some years earlier, and that the actions of which Mr. Hillen was accused were not of a sexual nature.

The administrative judge concluded that the Army had not proved sexual harassment by a preponderance of the evidence, citing the EEOC regulation 29 C.F.R. § 1604.11. He also held that the agency had not made a prima facie case of sexual harassment. The Army, and the Office of Special Counsel as intervenor, petitioned the full Merit Systems Protection Board for review.

#### B

The Board vacated the summary judgment, holding that the Army had presented an "unimpeached prima facie case" of sexual harassment. The Board found that

Captain Daugherty's unrebutted testimony establishes that appellant twice touched her without invitation and that appellant went out of his way to do so. The incidents were part of an apparent pattern of conduct and seriously upset Captain Daugherty and interfered with her work.

The Board agreed with the administrative judge that Ms. Byars' allegation about dirty jokes was not proved, but on review of her testimony the Board found that

> the evidence presents an unimpeached *prima facie* case of sexual harassment of Ms. Byars by the appellant by establishing that appellant touched Ms. Byars without her consent, that the touching was unwelcome to Ms. Byars, that the conduct was pervasive, and that it affected Ms. Byars' work performance.

With respect to Ms. Ingerski, the Board found that the administrative judge had ignored significant amounts of her testimony and improperly required that she have complained directly to Mr. Hillen. The Board found that Mr. Hillen's conduct

> did have a sexual connotation but that the evidence fails to show that appellant's conduct affected Ms. Ingerski's work performance or seriously affected her psychological well-being.

The Board concluded that there was not a *prima facie* case of sexual harassment concerning Ms. Ingerski.

Since the administrative judge had not permitted Ms. Schaefer and Ms. Parkinson to testify, the Board took their statements to the investigators as true. The Board found that Mr. Hillen's conduct "did not affect Ms. Parkinson's work performance nor did it seriously affect her psychological well-being." Concerning Ms. Schaefer, the Board found that Mr. Hillen's conduct could constitute sexual harassment, but that further information about the effect on Ms. Schaefer was needed.

The Board remanded the case to the administrative judge for completion of the hearing and readjudication. *Hillen v. Department of the Army*, 29 M.S.P.R. 690 (1986) (*Hillen I* ).

### Hillen II

#### A

Upon remand, the administrative judge again determined that Mr. Hillen's conduct did not violate 29 C.F.R. § 1604.11(a). Concerning Ms. Schaefer, the administrative judge cited her statement that she suffered no serious damage to her psychological well-being, found that Mr. Hillen's conduct toward her was not pervasive or severe, and that it was not of a sexual nature. Concerning Ms. Byars, the administrative judge found that although Mr. Hillen's frequent touching of Ms. Byars' shoulders may have been unwelcome, it was not of a sexual nature and did not constitute sexual harassment. The administrative judge found, as a matter of credibility, that Mr. Hillen did not touch Ms. Byars' breast.

Mr. Hillen did not dispute that certain incidents involving Captain Daugherty had occurred. Concerning the elevator incident, the administrative judge found that any touching of Captain Daugherty's breast was inadvertent when Mr. Hillen was "grabbing her hand" which was tucked under her arm for warmth. The coffee-pot incident was found to have no sexual intent, the administrative judge finding that Mr. Hillen was "attempting to be helpful" in brushing Captain Daugherty's skirt with his hand. The administrative judge stated that

> while she may honestly have perceived appellant's conduct as "serious", and even "pervasive," I find that her perceptions were erroneous. I further find that appellant did not engage in any intentional sexual conduct toward Captain Daugherty, and that the charges with respect to her are not sustained.

The administrative judge again ordered that Mr. Hillen be reinstated. The Army and the Special Counsel again requested review by the full Board.

#### B

After instructing on procedures for the evaluation of evidence, the Board again vacated the ruling of the administrative judge, stating that he had not resolved essential credibility issues:

To date, the administrative judge has failed to make findings as to whether the incidents described in the specifications referring to Captain Daugherty and Ms. Schaefer occurred, and failed to provide an adequate basis for his finding that the appellant did not touch Ms. Byars.

The Board held that Title VII and the EEOC Guidelines, as interpreted by the Federal Circuit in *Downes v. Federal Aviation Administration,* 775 F.2d 288 (Fed.Cir.1985), require that there be proof of serious effect on the psychological well-being of the victim. The Board stated that although the Army's regulations concerning sexual harassment did not make this requirement, and thus set a more stringent standard of workplace behavior as compared with this interpretation of the EEOC Guidelines, it was "somewhat ambiguous" from the Army's Notices as to whether it was proceeding under its own policies and rules or under the EEOC Guidelines.

The Board referred to this court's ruling in *Carosella v. United States Postal Service,* 816 F.2d 638, 643 (Fed.Cir.1987), that an agency may require more stringent standards of behavior of its employees. However, the Board held that the Army would be held to the proofs required to show violation of Title VII and the EEOC Guidelines "because the agency cited only 29 C.F.R. § 1604.11 in its decision letter."

The Board remanded the case to the administrative judge for further findings of fact. *Hillen v. Department of the Army,* 35 M.S.P.R. 453, 462 (1987) (*Hillen II* ).

### Hillen III

#### A

On the third hearing, it appears that no additional witness testimony was taken. However, the administrative judge referred at length to the Inspector General's investigatory report, which had not been previously considered because it had not been available to Mr. Hillen.

The administrative judge again found that Ms. Byars' testimony on the touching of her breast was not credible, and that the other incidents of which she complained were not sexual in nature. Concerning Captain Daugherty, the administrative judge found:

I do not doubt Captain Daugherty's credibility regarding the basic facts of the incidents in the elevator, in her office, and on the telephone. Appellant essentially concurred, in general, with her description of the events, and I find that the incidents did indeed occur.

The administrative judge found that except for the incident in her office (the coffee-pot incident) none of the other incidents involving Captain Daugherty was sexual in nature. The judge also found that her concern increased when she was informed that she would be working in Mr. Hillen's chain of command, inferring that she did not deem the incidents of serious concern when they occurred. The conduct concerning Ms. Schaefer was found to be not sexual in nature. The conduct concerning Ms. Ingerski and Ms. Parkinson was not discussed, having been disposed of in *Hillen I.*

The administrative judge found that Mr. Hillen did not have "sexual intent", and concluded that sexual harassment was not established. The Army and the Special Counsel again petitioned the full Board for review.

#### B

The Board held that the administrative judge erred in law, in requiring proof of "sexual intent" on the part of the alleged harasser, instead of applying the objective standard of how the conduct would be perceived by a reasonable person in similar circumstances. The Board stated the legal standard for sexual harassment as:

[T]he agency must show that the conduct is (1) sufficiently pervasive to alter the conditions of employment and create an abusive working environment; and (2) sufficiently severe and persistent to seriously affect the psychological well-being of an employee.

As authority the Board cited *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

Reviewing the conduct of Mr. Hillen towards Ms. Byars, the Board stated that "although the administrative judge could have

been more precise, he essentially found that the appellant frequently touched Ms. Byars, mainly on the shoulders, but that his touchings did not constitute sexual harassment." The Board concluded:

> [W]e find that the appellant's actions toward Ms. Byars were not sufficiently pervasive so as to alter her conditions of employment, and were not sufficiently severe so as to seriously affect her psychological well-being.

With respect to Ms. Schaefer, the Board agreed with the administrative judge that the conduct was "not of a sexual nature", and was

> not so pervasive as to alter the conditions of Ms. Schaefer's employment, nor was it severe and persistent, so as to seriously affect her psychological well-being. *See Downes* at 292.

Concerning Captain Daugherty, the Board upheld the administrative judge's finding that if Mr. Hillen had touched her breast in the elevator, the touching, although unwelcome, was inadvertent. As to the coffee-pot incident, the Board found that the touching of Captain Daugherty's thigh and buttocks occurred as Captain Daugherty described it, was not accidental, and was uninvited and offensive touching of a sexual nature. The Board found:

> [T]his single incident—which we find offensive, and do not condone—does not rise to the level of a Title VII violation . . . because it is not pervasive, nor is it of sufficient severity to seriously affect a reasonable employee's work or psychological well-being.

The Board also found that the telephone remarks were "essentially trivial", and that the "appraising" looks were not of a sexual nature and were "misperceived" by Captain Daugherty.

The Board concluded that the coffee-pot incident, standing alone, did not constitute Title VII sexual harassment. *Hillen v. Department of the Army,* 50 M.S.P.R. 293 (1991) (*Hillen III*). OPM petitioned the Board for reconsideration.

### Hillen IV

OPM argued that the Board had misconstrued the Court's holding in *Meritor Savings,* in requiring that the alleged harassing conduct be so severe as to seriously affect the psychological well-being of the employee.

The Board on reconsideration stated that although it had in *Hillen III* incorrectly stated the standard of *Meritor Savings* for hostile environment sexual harassment, Mr. Hillen's conduct did not violate the correct standard. The Board in *Hillen III* had cited both *Meritor Savings* and *Downes v. F.A.A.,* holding that the Army must establish a serious effect on the psychological well-being of an employee in order to establish violation of Title VII and the EEOC Guidelines. The Board now observed that the "earlier formulation" in *Downes,* which was decided in 1985, may not have been in full accord with *Meritor Savings,* which was decided in 1986. However, the only distinction that the Board drew between these decisions related to the issue of pervasiveness and severity; the Board did not mention the absence in *Meritor Savings* of any requirement of psychological injury to the employee.

The Board stated in *Hillen IV* that "[n]otwithstanding its recitation of the earlier [*Downes*] standard, however, in *Hillen III* the Board clearly applied the *Meritor* standard to the only instance of unwelcome sexual conduct which it found." As we shall discuss, the Board did not correctly apply the *Meritor Savings* standard. Indeed, the Board continued in *Hillen III* and *Hillen IV* to require psychological injury in order to establish actionable sexual harassment.

The Board also continued to fail to consider the entirety of the offensive behavior, although *Meritor Savings* and the EEOC Guidelines explicitly so require. The Board again focused on the "coffee pot incident by itself," and held that this "single sustained incident of unwelcome sexual conduct" did not constitute sexual harassment, since "this single incident was not so severe that it would have seriously affected a reasonable person's work or psychological well-being." The Board also reaffirmed that none of the other incidents, as to Captain Daugherty or any of the other women, separately met the

criteria of sexual harassment. *Hillen v. Department of the Army*, 54 M.S.P.R. 58, 63–64 (1992) (*Hillen IV*).

OPM petitioned this court for review, in accordance with 5 U.S.C. § 7703(d).

## II

### THE ISSUE OF NOTICE

In ruling that 29 C.F.R. § 1604.11 was not violated, the Board reaffirmed its position that the Army's policy and rules of workplace conduct would not be applied, for lack of adequate notice to Mr. Hillen.

OPM argues that Mr. Hillen had adequate notice of the charge that his actions violated the Army's policy and rules on sexual harassment. The Board and Mr. Hillen state that Mr. Hillen had adequate notice of only the EEOC Guidelines, 29 C.F.R. § 1604.11.

■ The Army's Notice of Proposed Removal stated that Mr. Hillen's conduct was

a direct violation of widely publicized and long standing Army and Command policies regarding sexual harassment.

\* \* \* \* \* \*

You may obtain a copy of the written evidence upon which this proposal is based, and pertinent Army and OPM regulations, from Colonel Floyd B. Mayes, Jr. [address]. . . .

Mr. Hillen's counsel requested copies of the material referred to in the Notice. The Army's letter in response included "Copies of Agency regulations and policies relied on to initiate the proposed action."

Included with the letter was a document dated 21 May 1981, issued by the Army's Military Traffic Management Command, entitled "Policy Statement and Definition of Sexual Harassment"; this document defined sexual harassment as

deliberate or repeated unsolicited verbal comments, gestures or physical contact of a sexual nature.

The document forbade such actions, gave illustrative examples, and required disciplinary action.

Also included with the letter to Mr. Hillen's counsel was a document dated 29 May 1981, signed by the Secretary of the Army, defining sexual harassment as including

(2) deliberate or repeated offensive comments, gestures or physical contact of a sexual nature in a work or duty-related environment.

The Notice of Decision that was sent to Mr. Hillen by Major General Small included the following paragraphs:

8. The Equal Employment Opportunity Commission regulation on sexual harassment (29 C.F.R. 1604.11), which forms the basis for the various Office of Personnel Management (OPM), Department of Defense and Army prohibitions on sexual harassment defines this as including:

'Unwelcome sexual advances . . . and other verbal or physical conduct of a sexual nature when . . . such conduct has the purpose or effect of . . . creating an intimidating, hostile or offensive working environment.' [Ellipses in original.]

\* \* \* \* \* \*

15. . . . I have no doubt that you were fully aware of agency policies in regard to such conduct. . . .

These references and documents constituted fair and adequate notice of the policies and regulations of which violation was charged. *See* 5 U.S.C. § 7513(b)(1) (the notice must state the specific reasons for the proposed action); *Brook v. Corrado*, 999 F.2d 523, 526 (Fed.Cir.1993) (quoting *Brewer v. United States Postal Service*, 647 F.2d 1093, 1097, 227 Ct.Cl. 276, 280 (1981), *cert. denied*, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982)) (the charges in the notice must be set forth "in sufficient detail to allow the employee to make an informed reply"). Mr. Hillen's reply was thorough and detailed. Indeed, the asserted distinction between the Army definition and the EEOC definition of sexual harassment, and the purportedly different standards for establishing violation thereof, does not appear as an issue in the case until the Army asked the Board to reconsider its decision in *Hillen II*, the Army objecting to the Board's statement that the Army's No-

tices to Mr. Hillen were "somewhat ambiguous."

Although we conclude that the Army's Notices to Mr. Hillen were adequate to inform him of the Army and Command policies and rules of which he was charged with violation, the subsequent proceedings were not without flaw. The Board states that the Army's policies and rules were not brought to the Board's attention until *Hillen III*, or at best until the Army's request for reconsideration of *Hillen II*. OPM does not state otherwise, arguing only that Mr. Hillen was fully apprised of the Army's policies and rules.

We need not decide whether, as interpreted by *Meritor Savings*, any differences between the EEOC Guidelines and the Army's definition of sexual harassment are indeed significant, although if they are, it would not be fair to Mr. Hillen now to impose a more rigorous standard of behavior than was argued during the hearings in *Hillen I* and *Hillen II*, when witnesses were examined and most of the record made. However, neither side apparently referred to anything other than Title VII and the EEOC Guidelines during these hearings and argument. We therefore review the Board's decision on the basis on which it was ultimately made, *i.e.*, violation *vel non* of the EEOC Guidelines and Title VII.

### III

### HOSTILE ENVIRONMENT SEXUAL HARASSMENT

OPM argues that Mr. Hillen, in the totality of his conduct, created a hostile and abusive working environment, in violation of Title VII as elaborated in the EEOC Guidelines and Supreme Court precedent. The Board and Mr. Hillen respond that since none of the five women suffered serious psychological injury and their work performance was not affected, the requirements of Title VII sexual harassment and the EEOC Guidelines were not met.

The Board also suggests that its view of the law is entitled to deference. However, it is our appellate obligation to assure that the law is understood and applied correctly. 5 U.S.C. § 7703(c).

### A

### *EEOC Guideline 29 C.F.R. § 1604.11(a)*

Title VII of the Civil Rights Act of 1964, at 42 U.S.C. § 2000e–2(a)(1), makes it unlawful

> for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's race, color, religion, sex or national origin.

It is generally accepted that Title VII places the same obligations on federal as on private employers. *McKinney v. Dole,* 765 F.2d 1129, 1138 n. 19 (D.C.Cir.1985). It is not disputed that the EEOC Guidelines apply to this case, and that there was adequate notice thereof. The Guidelines include the following definition:

> **29 C.F.R. § 1604.11(a)** Harassment on the basis of sex is a violation of section 703 of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when ... (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

The Supreme Court discussed the EEOC Guidelines with approval in *Meritor Savings*. The Court explained that unwelcome behavior based on the sex of the employee, if sufficiently severe or pervasive as to create an abusive working environment, constitutes discriminatory conduct. 477 U.S. at 67, 106 S.Ct. at 2405–06. The Court reaffirmed the *Meritor* standard in *Harris v. Forklift Systems, Inc.,* —— U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Holding that psychological injury is not a necessary criterion of hostile environment sexual harassment, the Court cited, *inter alia*, the Federal Circuit's pre–*Meritor* decision in *Downes v. F.A.A.* as having applied the incorrect standard. *Harris v. Forklift,* —— U.S. at ——, 114 S.Ct. at 370.

Although the legal standard applied by the Board in its final decision in *Hillen IV* is not

entirely free of ambiguity, in its brief on this appeal the Board states its position clearly, as follows:

> For conduct to be severe or pervasive enough to create a hostile environment, there must be proof that: (1) the conduct would have seriously affected the psychological well-being of a reasonable person, *and* (2) the plaintiff actually suffered injury from the conduct. *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 620 (6th Cir. 1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Brooms v. Regal Tube Co.,* 881 F.2d 412 (7th Cir. 1989).

(Emphasis in brief.) In the Board's *Hillen* opinions the absence of serious psychological injury to the victims was a significant or controlling factor in the result. This criterion was placed in quite different perspective in *Harris v. Forklift,* the Court stating that "while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." —— U.S. at ——, 114 S.Ct. at 371. The Court explained:

> A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.

—— U.S. at ——–——, 114 S.Ct. at 370–371.

 Sexual harassment will lie if the offensive conduct is based on the employee's sex, is unwelcome, and is sufficiently severe or pervasive to interfere with the employee's job performance or to create an abusive work environment. *See Harris v. Forklift,* —— U.S. at ——, 114 S.Ct. at 370 (when the work environment is abusive, the conditions of employment have been altered by the sex-based actions); *Meritor Savings,* 477 U.S. at 65, 106 S.Ct. at 2404–05 (sex-based harassment is unlawful if it interferes with the employ-ee's work performance or creates an intimidating, hostile, or offensive work environment). The Board's holding that to establish sexual harassment under the EEOC Guidelines there must be shown a serious effect on the employee's psychological well-being is incorrect as a matter of law.

 The Board further erred in determining for each incident, standing alone, whether it met the criteria of sexual harassment, and in failing to consider the effect on the workplace of the totality of the conduct, as we next discuss.

### B

*EEOC Guideline 29 C.F.R. § 1604.11(b)*

The Board, like the administrative judge, treated each separate incident in isolation, ignoring the totality of the circumstances. The EEOC Guidelines require that the entire conduct be considered:

> **29 C.F.R. § 1604.11(b)** In determining whether alleged conduct constitutes sexual harassment, the Commission will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred. The determination of the legality of a particular action will be made from the facts, on a case by case basis.

The EEOC's "Policy Guidance on Sexual Harassment", 8 Fair Employment Practices Manual (BNA) 405:6681, 6689 (March 19, 1990) explains that consideration should be given to the type of conduct (verbal or physical), its frequency, its offensiveness, the hostility of the conduct, whether the harasser is a co-worker or a supervisor, and the number of persons at whom the harassment was directed. The Supreme Court elaborated upon these criteria in *Harris v. Forklift:*

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant facts, may be taken into account, no single factor is required.

— U.S. at ——, 114 S.Ct. at 371.

The Board had determined that each separate incident involving Mr. Hillen did not create a hostile working environment. Indeed, in the usual case an isolated offensive incident does not create an abusive or intimidating environment. However, by viewing each incident in isolation, as if nothing else had occurred, a realistic picture of the work environment was not presented. The frequency of the offensive conduct as well as its nature and its pervasiveness are all factors to be weighed in determining the abusiveness of the environment, as the courts discussed in *Andrews v. Philadelphia*, 895 F.2d 1469, 1485 (3d Cir.1990) and *Ellison v. Brady*, 924 F.2d 872, 876–9 (9th Cir.1991).

It is the overall, composite effect on the terms, conditions, and privileges of employment that is the focus of the law, whose target is workplace discrimination. When there are multiple incidents and victims, it is the cumulative effect of the offensive behavior that creates the working environment. In *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir.1987) the court stated:

> The second question is whether incidents of sexual harassment directed at employees other than the plaintiff can be used as proof of the plaintiff's claim of a hostile work environment. The answer seems clear: one of the critical inquiries in a hostile environment claim must be the *environment*. Evidence of a general work atmosphere ... as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim.

(Emphasis in original.) The EEOC Policy Guidance reflects this analysis:

> [I]ncidents of sexual harassment directed at other employees in addition to the charging party are relevant to a showing of hostile work environment.

8 F.E.P. Manual at 405:6691 (citing *Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1014–15 (8th Cir.1988)).

On this appeal the parties focus primarily on Captain Daugherty, for in its final consideration of all of the incidents, the Board found that "only one, the coffee pot incident, was a deliberate and unwelcome touching ... of a sexual nature." The Board found that the coffee pot incident standing alone was "not pervasive," and not "of sufficient severity to seriously affect a reasonable employee's work or psychological well-being." The Board declined to consider the elevator incident involving Captain Daugherty, having found that the touching of her breast was inadvertent and hence did not meet the "deliberate and unwelcome" standard; declined to consider Mr. Hillen's telephone remarks since they were "essentially trivial"; and declined to consider Mr. Hillen's "appraising looks" since they were "not of a sexual nature."

As for Ms. Byars, the Board found that Mr. Hillen's actions "were not sufficiently pervasive so as to alter her conditions of employment, and were not sufficiently severe so as to seriously affect her psychological well-being." With respect to Ms. Schaefer, the Board found that the conduct "was not so severe as to alter the conditions of Ms. Schaefer's employment, nor was it severe and persistent, so as to seriously affect her psychological well-being. *See Downes* at 292." As we have remarked, the Board recognized that *Downes* was inconsistent with *Meritor Savings*, yet continued to invoke the requirement of psychological injury.

These rulings all illustrate the errors in the Board's application of 29 C.F.R. §§ 1604.11(a) and (b), for neither the absence of psychological injury, nor the lack of severity of a single incident or of actions toward a single victim, is the correct standard under the EEOC Guidelines. The Board erred similarly in its disposition of the incidents involving Ms. Ingerski and Ms. Parkinson. The Board had found in *Hillen I* that "appellant's conduct toward Ms. Ingerski did have a sexual connotation but that the evidence fails to show that appellant's conduct affected Ms. Ingerski's work performance or seriously

affected her psychological well-being." The Board did not refer to this conduct after *Hillen I*. The Board also found in *Hillen I* that Mr. Hillen's "conduct did not affect Ms. Parkinson's work performance nor did it seriously affect her psychological well-being." In addition to having applied the incorrect standard, the incidents involving Ms. Ingerski and Ms. Parkinson were not considered as part of the totality of the work environment.

The Board erred in its legal methodology, and reached the flawed conclusion that the "single sustained incident of unwelcome sexual conduct was not shown to have created a hostile environment in violation of Section 1604.11(a)(3)." *Hillen IV*, 54 M.S.P.R. at 67. Upon remand the Board shall consider the totality of the circumstances, as required by 29 C.F.R. § 1604.11(b), including the entirety of Mr. Hillen's conduct toward Captain Daugherty and, as appropriate, Mr. Hillen's conduct toward Ms. Ingerski, Ms. Parkinson, Ms. Schafer, and Ms. Byars.

## C
### *The Objective/Subjective Standard*

Mr. Hillen argues that his behavior would not have been offensive to a reasonable woman. The Court in *Harris v. Forklift* touched on the subject of reasonableness, reflecting the analysis which requires both an objective reasonableness standard in evaluating the conduct and its effect on the work environment, and also considers the subjective perception of the victim:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

—— U.S. at ——, 114 S.Ct. at 370. The presence of both objective and subjective considerations in determination of sexual harassment is recognized in the EEOC Guidelines, 8 F.E.P.Manual 405:6690.

As in all judgmental standards of behavior, reasonableness of the conduct is a critical consideration of the law. Much has been written about the reasonableness standard in sexual harassment cases. Compare, *e.g.*, Nancy S. Ehrenreich, "Pluralist Myths and Powerless Men: The Ideology of Reasonableness in Sexual Harassment Law", 99 Yale L.J. 1177 (1990) (disfavoring a "reasonableness" standard because it is derived from prevailing societal norms biased against women), with Bonnie B. Westman, "The Reasonable Woman Standard: Preventing Sexual Harassment in the Workplace", 18 Wm. Mitchell L.Rev. 795 (1992) (favoring a "reasonable woman" standard because the prevailing "reasonable person" standard is inadequate to support the rights of female victims).

We need not enter this debate, for no principled argument supports the view that sex-based offensive behavior in the workplace is immune from remedy simply because it may be culturally tolerated outside of the workplace. The purpose of Title VII is not to import into the workplace the prejudices of the community, but through law to liberate the workplace from the demeaning influence of discrimination, and thereby to implement the goals of human dignity and economic equality in employment. The reasonableness of sex-based conduct is determined from the perspective of eliminating "the entire spectrum of disparate treatment of men and women" in employment. *Meritor Savings*, 477 U.S. at 64, 106 S.Ct. at 2404 (quoting *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 707 n. 13, 98 S.Ct. 1370, 1375 n. 13, 55 L.Ed.2d 657 (1978) (quoting *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1198 (7th Cir.1971))).

 The Board found that Captain Daugherty "misperceived" most of the incidents that occurred:

> Although [Captain Daugherty] . . . did file a complaint [about the coffee pot incident], it was based in part on other incidents which we found she misperceived.

*Hillen IV*, 54 M.S.P.R. at 67. The Board appears to have substituted its own "perception" for that of Captain Daugherty, *see Andrews v. Philadelphia*, 895 F.2d 1469, 1482

(3d Cir.1990) (determining whether "the discrimination would detrimentally affect a reasonable person of the same sex in that position"), as well as having erred in its application of 29 C.F.R. § 1604.11(b), which requires that the perception of any one incident be determined in the context of all of the incidents. The EEOC regulation reflects the common-sense position that it is the totality of the workplace conduct that creates the working environment.

▇ The Board also misapplied the fact that Captain Daugherty did not complain about the work environment until she learned that Mr. Hillen would be placed in her chain of command:

> The degree to which the coffee pot incident in fact affected Captain Daugherty is not clear.... [A]lthough Captain Daugherty was upset at the time by the unwelcome touching, she was not greatly concerned by this or other incidents until she learned of the appellant's placement in her chain of command.

*Hillen IV,* 54 M.S.P.R. at 67. The position of the alleged harasser in relation to the employee is to be considered in evaluating the effect of the offensive actions on the employee's work environment. 8 F.E.P.Manual at 405:6689. It is indeed relevant if the harasser is more than simply an annoying presence, but is in a position to affect one's job. The Board erred in treating Captain Daugherty's heightened concern as diluting the force of her complaint, when in fact it was an exacerbating factor.

▇ The Board also erroneously required that the factfinder must "establish ... by the preponderance of the evidence, that the conduct was of a sexual nature." *Hillen III,* 50 M.S.P.R. at 298. Conduct that is based on the sex of the victim, whether or not the conduct is "of a sexual nature," is appropriately considered in determining whether an abusive or hostile environment has been created. "[S]ex-based harassment—that is, harassment not involving sexual activity or language—may also give rise to title VII liability ... if it is 'sufficiently patterned or pervasive' and directed at employees because of their sex." 8 F.E.P.Manual at 405:6692 (quoting *Hicks,* 833 F.2d at 1416). Applica-

tion of this principle is seen in, *e.g., Hall v. Gus Constr.,* 842 F.2d at 1014, wherein the court observed that "[i]ntimidation and hostility toward women because they are women can obviously result from conduct other than sexual advances." In *Bell v. Crackin Good Bakers, Inc.,* 777 F.2d 1497, 1503 (11th Cir. 1985) the court remarked that "[s]exual harassment can be ... threatening, bellicose, demeaning, hostile or offensive conduct by a supervisor in the workplace because of the sex of the victim of the conduct."

That women who are the objects of discriminatory behavior because of their sex are able to maintain satisfactory job performance is not grounds for denigrating their concerns. *Harris v. Forklift,* —— U.S. at ——–——, 114 S.Ct. at 370–371. The criterion is not what a reasonable woman employee is capable of enduring, but whether the offensive acts alter the conditions of employment. *See McKinney v. Dole,* 765 F.2d 1129, 1138 (D.C.Cir.1985) ("any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII"); *Carrero v. New York City Housing Authority,* 890 F.2d 569, 578 (2nd Cir. 1989) ("A complaining employee is required to prove ... that the conduct was sufficiently pervasive to create an offensive environment antithetical to the priority of merit—not sex or some other prohibited criterion—in the workplace").

Offensive behavior when based on the sex of the employee is discriminatory and, when sufficiently severe or pervasive to constitute an abusive or hostile work environment, violates Title VII and the EEOC Regulations. The Army Command was justified in applying a rigorous standard of workplace conduct to this senior executive, for Mr. Hillen's position of high authority at the Command could have contributed to the pervasiveness and severity of the behavior, and its perception as abusive and intimidating. This position, as Major General Small stated in the Army's decision, required strict observance of appropriate standards of conduct.

*Conclusion*

As was reaffirmed in *Harris v. Forklift,* psychological injury or interference with work performance are not predicate to a finding of sexual harassment. The Board erroneously required that these criteria be met. On remand the Board shall redetermine the correctness of the Army Command's removal action, in accordance with the EEOC Guidelines and Title VII, as discussed herein.

The Board did not review the remedy imposed by the Army, although this issue was raised by Mr. Hillen in his appeal to the Board, and in *Hillen II* the Board directed the administrative judge to consider it. Thus this aspect is not ripe for review by this court. On remand the Board may reconsider the remedy.

*Costs*

No costs.

*VACATED AND REMANDED.*