Penny Lynn WALK, Plaintiff,

v.

**RUBBERMAID INCORPORATED,**
Defendant.

No. 5:93CV1629.

United States District Court,
N.D. Ohio,
Eastern Division.

Nov. 15, 1994.

Charles A. Kennedy, Kennedy, Cicconetti & Rickett, Wooster, OH, for plaintiff.

Peggy J. Schmitz, Lincoln P. Oviatt, Susan E. Baker, Critchfield, Critchfield & Johnston, Wooster, OH, for defendant.

### *MEMORANDUM AND ORDER*

ANN ALDRICH, District Judge.

Penny Lynn Walk brings this action against her former employer, Rubbermaid, Inc. under Title VII. Walk asserts two causes of action. First, she alleges that Rubbermaid, through its employee Tom Lombardo, created a sexually hostile and abusive working environment. Second, she alleges that Rubbermaid employed a pay scheme under which she received lower pay than male employees in similar positions.

Rubbermaid moves for summary judgment (# 43). For the reasons stated below, this Court grants Rubbermaid's motion for summary judgment.

### I.

The material undisputed facts are as follows. Walk began her employment with Rubbermaid in 1979 as a keypunch data entry worker. Through a series of promotions, she attained the position of supervisor of telemarketing in 1989. In June of 1989, she began reporting to Tom Lombardo.

In January of 1990, Walk received notice that she was to be promoted to the position of "manager." She received business cards to that effect, and was represented by Rubbermaid as having attained the position. Rubbermaid subsequently determined that the promotion was inappropriate and removed Walk's title as manager of telemarketing. Walk alleges that this caused her significant embarrassment and financial loss.

Rubbermaid employs a system of compensation in which jobs are classified according to a number of factors. Those classifications establish salary ranges. Before being promoted to supervisor of telemarketing, Walk had a grade range of 15. Upon her promotion in January of 1990, her range was increased to a 17. Walk asserts that at the time, a more appropriate range would have been level 19. In fact, defendant raised Walk's position's level to 19 in July 1991. At all points during this time period, however, evidence suggests that her pay was below the "midrange" established for the scale.

Beginning in 1989, Walk alleges that working with Lombardo was extremely difficult. While the two never worked at the same site, Walk complained of Lombardo's foul language and unresponsiveness. Specifically, Walk complained of voice mail messages in which Lombardo used the word "fuck." She also recalls instances in which Lombardo failed to address Walk's proposals and questions. On one occasion, Lombardo dismissed Walk from his office, saying, "I have no time for you or your fucking menopausal bitches."

Walk complained about the treatment to Rubbermaid, and attended a meeting at which several Rubbermaid employees discussed Lombardo's behavior. Following the meeting, Walk acknowledged some improvement, but Walk continued to be very dissatisfied with the way Lombardo treated her. Walk requested a transfer, and upon learning that none was possible, Walk resigned from her employment at Rubbermaid.

From these circumstances, Walk brings two causes of action based solely on Title VII. First, she alleges that Lombardo's conduct created a "sexually hostile working environment" in violation of Title VII. Second, she claims that Rubbermaid's compensation

scheme was based on gender, and resulted in a lower pay range for her than for similarly employed males.

Defendant Rubbermaid moves for summary judgment on both claims.

## II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . .

The nature of materials properly presented in a summary judgment pleading is set forth in Federal Rule of Civil Procedure 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.,* 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### A. Sexual harassment

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

■ The Supreme Court has made clear that Title VII does not merely target economic or tangible manifestations of discrimination. Instead, the phrase "terms, conditions, or privileges of employment" is intended to cover an entire range of disparate treatment of persons based on one of the mentioned classifications. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Harris v. Forklift Systems, Inc.,* 510 U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Landgraf v. USI Film Products,* —— U.S. ——, ——, 114 S.Ct. 1483, 1491, 128 L.Ed.2d 229 (1994).

■ Illegal disparate treatment includes the creation of a hostile or abusive working environment. *Harris, supra,* 510 U.S. at ——, 114 S.Ct. at 370. Thus, Title VII is violated when the workplace is characterized by "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citations omitted).

■ The test for determining whether a working environment is hostile or abusive is a multifactored one, and "by its nature can-

not be a mathematically precise test." *Id.* at ——, 114 S.Ct. at 371.

> [W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id.* Title VII does not require a showing that the plaintiff suffered concrete psychological injury as a result of the environment, though such a showing would be relevant as one of the factors to be considered. *Id.* The absence or presence of a single factor from among that list is not necessarily determinative of an actionable working environment.

■ A showing that an employee's working environment is abusive or hostile does not alone necessarily give rise to a Title VII action. The employee must first demonstrate that she or he belongs to a protected group. *See, e.g., Kopp v. Samaritan Health System, Inc.,* 13 F.3d 264 (8th Cir.1993). Because the purpose of Title VII is to create equality in the workplace by targeting discrimination based on a number of classifications, the employee must also demonstrate that the employer's hostility or abuse was itself discriminatory. *See e.g. Meritor, supra* at 66, 106 S.Ct. at 2405; *Harris, supra* at ——, 114 S.Ct. at 372 (Ginsberg, concurring).

■ This is not to suggest that an employee must demonstrate sexual content in the harassment. While Title VII creates a cause of action for quid pro quo sexual harassment, Title VII also prohibits gender-based discriminatory treatment which rises to a particular level of hostility or abusiveness. *See Hicks v. Gates Rubber Co.,* 833 F.2d 1406 (10th Cir.1987); *King v. Hillen,* 21 F.3d 1572 (Fed.Cir.1994). Sexual content in harassment is only one example of the kinds of actions which are prohibited under the protections of Title VII. A plaintiff must demonstrate, however, that she or he was subjected to this treatment because of their protected status. Thus, for example, a female plaintiff claiming gender-based harassment must demonstrate that she was target-ed with hostile or abusive treatment because she is a woman. *Id. See also Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

### B. Gender discrimination

■ As noted above, Title VII prohibits discriminatory treatment "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). There are two ways in which a plaintiff can demonstrate a discriminatory compensation practice, either by a showing of discriminatorily disparate impacts in its practices or through a showing of disparate treatment of the plaintiff herself or himself. Each is considered below.

#### 1. Disparate impact claim

■ In *Wards Cove Packing v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), the Supreme Court held that actions may arise under Title VII for facially neutral employment practices which have disparate and discriminatory impacts. The Court held that in order to establish a prima facie case of such a disparate impact, however, a plaintiff must show more than a mere statistical imbalance in the employment decisions. A plaintiff "must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack." *Id.* at 656–57, 109 S.Ct. at 2125.

■ If a plaintiff meets this burden of establishing a prima facie case of disparate impact,

> the case will shift to any business justification [the employer] offer[s] for their use of these practices. This phase of the disparate-impact case contains two components: first, a consideration of the justification an employer offers for his use of these practices; and second, the availability of alternative practices to achieve the same business ends, with less racial impact.

*Id.* at 658, 109 S.Ct. at 2125, *citing Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975).

### 2. Disparate treatment claim

In *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), a disparate-treatment discrimination case, the Supreme Court made it clear that a plaintiff has the burden of proving "that the employer relied on sex-based considerations in coming to its decision." *Price Waterhouse, supra,* 490 U.S. at 242, 109 S.Ct. at 1786.

> [O]nce a plaintiff in a title VII case has shown that gender played a motivating part in an employment decision, the defendant may avoid liability only by proving that it would have made the same decision even if it had not allowed gender to play a role.

*Id.* at 244–45, 109 S.Ct. at 1787–88. No burden of proof is shifted to employers in such a situation. *Id. See also Hyatt Corp. v. NLRB,* 939 F.2d 361, 374 (6th Cir.1991). However, "if an employer allows gender to affect its decisionmaking process, then it must carry the burden of justifying its ultimate decision." *Price Waterhouse, supra,* 490 U.S. at 248, 109 S.Ct. at 1789.

In cases not involving mixed motives,

> an inference of discrimination arises after a plaintiff has made out a prima facie case of discrimination under Title VII. The employer must then rebut the inference by articulating a legitimate nondiscriminatory reason for its action. The final burden of persuasion remains on the plaintiff to show that the reasons offered by the employer were not legitimate, but were a pretext for discrimination.

*Cesaro v. Lakeville Community School Dist.,* 953 F.2d 252, 254 (6th Cir.1992). *See also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In judging whether gender played a motivating role in an employer's decision, a court must consider whether the gender of the plaintiff was a factor "at the moment of the decision." *Price Waterhouse, supra,* 490 U.S. at 250, 109 S.Ct. at 1790.

### III.

### A. Sexual harassment

As noted above, a female plaintiff claiming gender-based harassment must demonstrate that she was targeted with hostile or abusive treatment because she is a woman. *Hicks, supra,* 833 F.2d at 1416; *King v. Hillen,* 21 F.3d 1572 (Fed.Cir.1994). In the instant case, Walk does not allege any sexual content to any of Lombardo's comments or actions. Deposition of Penny Lynn Walk at 86. Lombardo never touched Walk and never made any indecent proposals. Walk specifically denies that sex had anything to do with any of Lombardo's conduct or comments. Walk even characterized the foul language as merely derogatory, and void of sexual connotation. Deposition of Penny Lynn Walk at 87.

Walk correctly noted in her memorandum in opposition to summary judgment that the law does not require sexual content in an employer's actions. She must, however, demonstrate facts which suggest that Lombardo's actions were directed at her because she is a woman. Walk has failed to do so.

Walk asserts several times that this treatment was gender-based. However, her own conclusions are insufficient to withstand a motion for summary judgment, in the absence of supporting facts. In reaching her conclusion, Walk relies almost exclusively on a single incident with Lombardo in which he used the phrase "fucking menopausal bitches." Deposition of Penny Lynn Walk at 134–5. While this Court would agree that this comment is thoroughly offensive, a claim of hostile environment must rest upon more than a mere utterance of an offensive comment. *Meritor, supra,* 477 U.S. at 67, 106 S.Ct. at 2405–06.

In this case, Walk asks this Court to accept her conclusion that Lombardo's motivation for his behavior was gender-based. This Court simply does not have evidence to support that conclusion. The evidence before this Court, even viewed in a light most favorable to the plaintiff, shows that both men and women were affected by Lombardo's offensive comment and language. A female em-

ployee of Lombardo in the same period testified as follows:

Q When you were working with Tom Lombardo at—

A Uh-huh.

Q —any time did you ever hear him make detrimental remarks regarding women?

A Not that I recall specifically.

Q You feel that he treated you different as a woman than he did other people in the same managerial capacity that were men?

A No.

.    .    .    .    .

Q Are women treated differently during, I'm talking about the years Penny [Walk] worked there, were women treated differently than other employees by higher management?

A I would say no.

Deposition of Katherine Newmann at 27–28, 31. Furthermore, male employees complained of Lombardo's behavior as well. The deposition of David Colvin included the following passage:

Q Do you recall a managerial meeting in August of 1991, in fact, August 9th of 1991 where all the managers were talking about Tom Lombardo?

A Yes.

Q He wasn't present at the moment, at the time?

A That's right.

Q It was sort of a managerial meeting set up by the company to assist in managerial problems?

A Hm-hmm. Yes.

Q During that meeting, did you state that you did not like the way Tom Lombardo used language around women?

A No.

Q Was that a fact, did Tom Lombardo use foul language around women?

A Yes.

Q Was it discussed in that meeting in August 9, 1991?

A Yes.

Q Who discussed it?

A The group.

Q Did you participate in that discussion?

A Yes.

Q What input did you have, in other words, what did you say?

A Well, I—going back to your question, you can take the woman off and I would—I stated that I didn't appreciate his language period.

Q Period. Meaning it was foul language?

A Right.

Q Do you believe the type of language he used in the work place would be offensive to women of ordinary sensibility?

A Yes.

Q It was offensive to you in the work place?

A Right.

Deposition of David Colvin at 17–19. Walk would have this Court conclude that Colvin was only concerned about the environment because of its effects on women. Walk's Mem. in Opp. at 8. The testimony, however, does not support this conclusion.

This Court is faced with a plaintiff who concludes from her experiences with an employer that she was the target of gender-based harassment. The record shows evidence of poor treatment by her supervisor, but it shows no basis on which this Court or any reasonable jury could conclude that the treatment was discriminatorily targeted toward women. In the absence of such evidence, this Court must conclude that there was no hostile or abusive working environment based on gender.

### B. Gender discrimination

Walk's complaint and her memorandum in opposition to summary judgment both assert that Rubbermaid discriminated against Walk on the basis on gender in failing to increase her salary range and job classification. In neither the complaint nor the memorandum in opposition did Walk fully detail the nature of that claim, however. As noted above, there are two possible means by which a plaintiff could demonstrate discriminatory employment practices such as the ones complained of by Walk. This Court will treat the

plaintiff's complaint and memorandum in opposition as having asserted both types of claims for purposes of this summary judgment.

### 1. Disparate impact claim

■ As noted above, any claim of discriminatory disparate impact in an employment policy must begin with a showing by the plaintiff that a facially neutral system creates a disparate impact among a protected class. In the instant case, the parties agree that Rubbermaid's policies regarding the establishment of job grades and salary ranges is completely facially neutral.

■ However, Walk has shown absolutely no evidence, statistical or otherwise, upon which this Court could rely to conclude that the policies create a disparate impact. In fact, the sole allegation made by Walk appears in her memorandum in opposition to summary judgment, in which she asserts "Because Plaintiff's position was a traditionally female position, there exists [sic] questions of fact as to whether Defendant applied their gender neutral salary policy inconsistently in the case of Penny Walk on the basis of her sex." Plaintiff's Mem. in Opp. at 19. Walk asks this Court to credit an undocumented assertion that the position is traditionally female and an unstated implication that Rubbermaid's policy is applied in a discriminatory manner.

Such assertions, without any supporting evidence are not sufficient to withstand a motion for summary judgment. In evaluating a summary judgment motion, a court must identify genuine issues of material fact. If there is evidence to support a conclusion in favor of the non-moving party regarding one of those facts, summary judgment is inappropriate. In this case, however, there is no evidence to support a conclusion that Rubbermaid's facially neutral policy had a disparate impact on women or on Walk. Accordingly, summary judgment is appropriate with respect to this claim.

Because Walk failed to present even a prima facie case of disparate impact, this Court need not arrive at any conclusions regarding Rubbermaid's justifications for its practices surrounding job classification and salary determination.

### 2. Disparate treatment claim

As noted above, a plaintiff may establish that an employer has engaged in discriminatory treatment if the plaintiff can establish that the employer considered the plaintiff's protected status in arriving at the business decision. *Price Waterhouse, supra* at 242–251, 109 S.Ct. at 1786–1791. The Supreme Court in *Price Waterhouse* relied heavily on the presence of sex stereotyping in the performance reviews of the female plaintiff. It noted, however, that even in a case where there were comments based on sex stereotypes, "the plaintiff must show that the employer actually relied on her gender in making its decision." *Id.* at 251, 109 S.Ct. at 1791.

■ Walk has shown no sex stereotyping in her reviews or in the designation of her job classification. She has merely asserted that because she is a woman, the discrimination must be gender based. As this Court noted above with respect to a disparate impact claim, without further evidence to support the contention that Rubbermaid's action were based on Walk's gender, this assertion simply cannot withstand a motion for summary judgment.

### IV.

Because this Court grants summary judgment for Rubbermaid for the reasons listed above, this Court need not arrive at any decision regarding Rubbermaid's liability as an employer under Title VII. Furthermore, this Court will not issue any opinion regarding the question of whether Walk voluntarily resigned from her position at Rubbermaid. Finally, this Court need not arrive at any conclusion regarding the applicability of remedies and jury provisions found in the Civil Rights Act of 1991.

### V.

In sum, this Court grants defendant Rubbermaid's motion for summary judgment.

This order is final and appealable.

IT IS SO ORDERED.