**Anna DILAURENZIO, Plaintiff,**

v.

**ATLANTIC PARATRANS, INC., Defendant.**

No. 94–CV–4615(JG).

United States District Court, E.D. New York.

May 29, 1996.

312

Michael I. Gandin, Gandin, Schotsky & Rappaport, P.C., Melville, New York, for Plaintiff.

Ronald A. Balzano, Silverman, Collura & Chernis, P.C., New York City, for Defendant.

## MEMORANDUM AND ORDER

GLEESON, District Judge:

Plaintiff, Anna DiLaurenzio, brings this sex discrimination claim pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, against her former employer, Atlantic Paratrans ("Atlantic"). DiLaurenzio claims that she was the victim of a hostile work environment and that Atlantic, as her employer, is liable to her for that environment because it hired and condoned the conduct of DiLaurenzio's supervisor, Eric Dove, who used his authority to further this hostile work environment. Atlantic has moved for summary judgment. For the reasons stated herein, this motion is denied.

## FACTS

In March 1992, Anna DiLaurenzio began working as a scheduling clerk for Atlantic, which provides transportation services to disabled customers. Her immediate supervisor was Eric Dove, who had interviewed and hired her for this position. Dove, the supervisor of ten to fifteen such clerks, oversaw the daily activities of these employees, determined their work schedules, hired new clerks and fired those who were not performing satisfactorily, and decided whether a clerk was entitled to a raise in pay.

DiLaurenzio alleges that shortly after she began working for Atlantic, Dove started verbally and physically harassing her. She alleges that this harassment occurred several times per week from about March 1992 to May 1993, when she left Atlantic. DiLaurenzio claims that Dove held conversations with other employees two or three times per day in the office about sex and sexually suggestive topics, and that Dove made statements in the course of these conversations that were directed at her. For example, she claims that in the context of one such conversation, Dove stated that "when [he] was done getting off of [DiLaurenzio, she was] going to be hitting the ceiling," which DiLaurenzio understood to mean that she would enjoy having sex with him. In addition, DiLaurenzio alleges that Dove told her that he had never been with a white woman and that he would love to have sex with a white women. When DiLaurenzio expressed her lack of interest in having sex with him, he told her that "once [she got] a black guy, [she would] never go back to a white guy."

DiLaurenzio also claims that, in response to another employee's announcement that she was engaged, Dove said that "before her wedding he should give her a good screw." Towana Taylor, a co-worker of DiLaurenzio, stated in her deposition that Dove said, with regard to the engaged woman, that he could have had the engaged woman before her fiance did. Dove allegedly also bragged of having sexual relations with female employees of Atlantic, made a grinding gesture with his pelvis behind one female employee, and asked an employee what her favorite sexual position was. Finally, DiLaurenzio asserts that Dove openly compared female employees' breast sizes, and concluded in her presence that she had a big chest.

DiLaurenzio claims that Dove also subjected her and other employees to physical harassment by touching her and others in a sexually suggestive manner in the office while they were working. She alleges that Dove tried several times to grab and fondle other employees' breasts and that he put his arm around her two to three times per week. When Dove put his arm around her, DiLaurenzio claims that she always asked him to "take his hands off of her." DiLaurenzio alleges that there were times when Dove put his arms around her and did not let her go for up to one minute; he would squeeze her so tightly that she could not immediately

break free. When DiLaurenzio did break free, much of the time she would go outside and smoke cigarettes, until "she felt it was all right to go back in [when Dove] would not be around [her work area]."

DiLaurenzio further claims that on several occasions when she was seated at her computer terminal, Dove put his arm around her and massaged her shoulders. DiLaurenzio asserts that she always asked him to stop and sometimes she would have to ask as many as four times before he stopped. A co-worker, Miguelina Fanas, corroborates DiLaurenzio's allegation, stating that three to ten times per week, Dove held DiLaurenzio, and although DiLaurenzio asked to be let go, Dove refused until "he felt like letting go, then he let her go." Dove admits in his deposition that he put his arm around DiLaurenzio while she was working. DiLaurenzio claims that on occasion Dove would come up from behind her and touch his chest to the back of DiLaurenzio. DiLaurenzio stated that this conduct was not accidental, that Dove did it to "the other girls" as well. Moreover, she alleges that Dove kissed female employees on the lips.

While DiLaurenzio never explicitly claims that Dove punished her for rebuffing his advances, she does allege that Dove treated her differently than he treated his other subordinates. She claims that while other employees were given a weekend day off after one year, DiLaurenzio was not granted her weekend day off until later. She also claims that Dove yelled at her for not completing work, reprimanded her for taking time off that he had previously approved, and that he had numerous harassing phone calls made to her home to make sure that she was actually at home on days when she called in sick. DiLaurenzio claims that Dove's abusive treatment of her began around the same time that she rebuffed his touching, holding, and squeezing of her body while she was at work.

DiLaurenzio claims that she conferred with her co-workers about reporting Dove's conduct to his superiors. However, they were afraid and jointly concluded that there was a risk of losing their jobs if they did.

Finally, DiLaurenzio claims (and submits corroborating deposition testimony from a co-worker) that Dove scared his subordinates into believing that they could not bring a sexual harassment suit against him. Shortly after the highly-publicized confirmation hearings of Supreme Court Justice Clarence Thomas, in a conversation about sexual harassment, Dove stated to DiLaurenzio and the other clerks that if any of his employees ever sued him for sexual harassment, "he was going to chew [their] asses off in court." In the course of such conversations, Dove implied that any employees who reported his conduct would lose their jobs by stating, "this is the only job you (sic) ever have, you can't do nothing else out there." He told these employees that "whatever happens here, if I do any touching, it's friendship, it's not sexual harassment.... He went up one by one to each girl and said, 'Did I ever sexually harass you?'"

## DISCUSSION

Atlantic denies DiLaurenzio's allegations and argues that it is entitled to summary judgment because there is no genuine issue of material fact as to whether Dove subjected DiLaurenzio to treatment which constitutes sexual harassment under Title VII, and that even if he did, it would be improper, as a matter of law, to allow Dove's conduct to be imputed to Atlantic.

### A. The Standard For Summary Judgment

Summary judgment may not be granted "unless the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists, and all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *Gallo v. Prudential Residential Services, Limited Partnership,* 22 F.3d 1219, 1223 (2d Cir. 1994). The moving party may obtain summary judgment by showing that little or no

evidence may be found in support of the non-moving party's case. When no rational jury could find in favor of the non-moving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper. *Id.*

### B. *Sexual Harassment Under Title VII*

■ Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of an individual's race, color, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). There are two forms of sexual harassment that violate Title VII—"quid pro quo" and "hostile work environment" harassment. *Tomka v. Seiler Corporation,* 66 F.3d 1295, 1305 (2d Cir.1995). A quid pro quo case exists when a plaintiff presents evidence that she was subjected to unwelcome sexual conduct, and that her reaction to that conduct was then used as a basis for decisions affecting her compensation, terms, conditions, or privileges of her employment. *Karibian v. Columbia University,* 14 F.3d 773, 777 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994). A hostile work environment case, on the other hand, requires a showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Id.* at 779 (citations and quotation marks omitted). Because DiLaurenzio proceeds on only a hostile work environment theory in this case, I consider only whether there is a genuine issue of material fact as to whether this form of sex discrimination occurred at Atlantic and, if so, whether it can be imputed to Atlantic.

### 1. *The Severity Or Pervasiveness Of The Sexual Harassment*

Atlantic first argues for summary judgment on the ground that even if DiLaurenzio's allegations are regarded as true, Dove's alleged conduct was not sufficiently severe or pervasive to constitute sexual harassment under Title VII.

■ Determining whether the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment requires an evaluation of all the circumstances. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Such circumstances may include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or merely offensive, and whether it unreasonably interferes with the employee's work performance. *Id.* at 22–23, 114 S.Ct. at 371. The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. *Carrero v. New York City Housing Auth.,* 890 F.2d 569, 577 (2d Cir.1989). Finally, the environment must be objectively hostile or abusive—one that a reasonable person would find hostile or abusive—and the victim must subjectively perceive the environment to be abusive. *Harris,* 510 U.S. at 20–21, 114 S.Ct. at 370. This is not a precise test. It leaves the determination of whether there is "hostility" or "abuse" in the workplace in the hands of juries, and provides them with little guidance in making it. *Id.* at 24, 114 S.Ct. at 372 (Scalia, J., concurring). As a result, it is the sort of issue that is often not susceptible of summary resolution.

■ I find that DiLaurenzio's allegations, supported in her affidavit and the depositions of her co-worker, Miguelina Fanas, create a genuine issue of material fact as to whether DiLaurenzio was subjected to a hostile work environment. She alleges not only vulgar and sexually suggestive comments by Dove to the clerks, such as openly comparing the breast sizes of female employees and suggesting that DiLaurenzio have sex with him, but also that Dove regularly touched, held, and massaged DiLaurenzio and other clerks in a sexually offensive fashion. DiLaurenzio states that Dove's abuse often drove her to tears and that she was forced to exit the office as a result. Finally, DiLaurenzio does not allege episodic acts by Dove; she has presented evidence that Dove regularly made these offensive comments and touchings.

These allegations are sufficiently severe and pervasive to create a genuine issue of fact as to whether Dove subjected DiLaurenzio to a hostile work environment. *See, e.g., Harris,* 510 U.S. at 19, 114 S.Ct. at 369 (finding a hostile work environment where a supervisor insulted employee because of her gender, called her a "dumb ass woman," suggested that she accompany him to a Holiday Inn to negotiate her raise, and invited employee and other female employees to get coins from his front pants pocket); *Kotcher v. Rosa & Sullivan Appliance Center,* 957 F.2d 59, 61 (2d Cir.1992) (finding a hostile work environment where a supervisor pretended to masturbate behind an employee's back and suggested that her sales were due to her "bodily equipment"); *Carrero,* 890 F.2d at 578 (finding hostile work environment where a supervisor fondled a female employee's knee, kissed her neck, and attempted to kiss her lips); *Fernot v. Crafts Inn, Inc.,* 895 F.Supp. 668, 675 (D.Vt.1995) (finding a hostile work environment where a supervisor hugged and grabbed employee, stared at her breasts, and commented that her legs went all the way to her neck).

### 2. *The Imputation Of Dove's Conduct To Atlantic*

Atlantic next argues that even if Dove's alleged treatment of DiLaurenzio was severe and pervasive enough to constitute a sexually hostile work environment, Atlantic is not liable for his conduct because it had provided a reasonable avenue for complaint by DiLaurenzio and, as DiLaurenzio admits, had no actual knowledge of the alleged harassment. I do not reach this question, however, because DiLaurenzio proceeds on the theory that Dove used his supervisory authority to further the hostile work environment, and I find that there is a genuine issue of material fact on that issue. *See Karibian,* 14 F.3d 773, 780.

Even where a work environment is found to be sufficiently severe or pervasive to be abusive, a plaintiff must establish that the conduct which created the hostile environment should be imputed to the employer. *Tomka,* 66 F.3d at 1305 (citations and internal quotation marks omitted). The determination is guided by common law principles of agency. *Id.* If a plaintiff's supervisor is the alleged harasser, an employer will be liable if the supervisor uses his actual or apparent authority to further the harassment, or if he was otherwise aided in accomplishing the harassment by the existence of the agency relationship. *Karibian,* 14 F.3d at 779. A supervisor's use of actual or apparent authority is shown where the employee alleges facts which establish a nexus between the supervisory authority and the harassment. *Tomka,* 66 F.3d at 1306 (where a supervisor used his authority to convene a business dinner where he fostered excessive drinking by paying for the drinks with a company credit card, company could be liable for rape of plaintiff which followed).[1]

Here, there is no dispute that Dove was the supervisor of the Atlantic scheduling clerks, including DiLaurenzio. Dove had the authority to hire and fire clerks, schedule their work hours, determine work assignments, and grant pay raises. By the defendant's own admission, Dove was responsible for hiring DiLaurenzio, evaluating her job performance, and determining which days and hours she worked and whether she received days off. Moreover, Dove was responsible for granting DiLaurenzio pay raises. Finally, Dove had the authority to fire DiLaurenzio. Therefore, it is clear that Atlantic delegated to Dove supervisory authority over DiLaurenzio.

When viewed in accordance with the standards applicable to summary judgment motions, DiLaurenzio's allegations create a genuine issue of material fact as to whether Dove used his authority to further the hostile work environment. First, she claims that Dove had his employees make numerous ha-

1. Alternatively, where a low-level supervisor does not rely on his supervisory authority to carry out the harassment, or a co-worker of the plaintiff is the alleged harasser, the harassment is not imputed to the employer unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it. *Id.* at 1305. As noted above, it is not necessary to reach this issue here because DiLaurenzio's claim that Dove used his authority to perpetuate the hostile work environment raises a genuine issue of fact.

rassing telephone calls to her home on days she was ill, purporting to be confirming that she was actually at home. Second, DiLaurenzio alleges that because Dove was in a position to terminate her and her co-workers, she did not report Dove's conduct to his supervisor for fear of being terminated by him. Third, because Dove supervised all of the clerks, he was able to roam freely through the office, talking to and touching the female employees without having to answer to any other Atlantic employee at the office. Finally, DiLaurenzio alleges that Dove actually threatened DiLaurenzio and her co-workers, stating that he would bring about retaliatory harm if they were to bring a sexual harassment suit against him. If these allegations are taken as true and all inferences are drawn in favor of DiLaurenzio, a rational jury could conclude that Dove was aided in accomplishing his harassment by the existence of his supervisory relationship.

■ In addition, while DiLaurenzio does not assert a theory of quid pro quo sexual harassment, conduct which renders an employer liable under a quid pro quo theory may also result in employer liability when that conduct becomes so severe and pervasive as to create a hostile work environment. *Karibian,* 14 F.3d at 781. Here, DiLaurenzio claims that after Dove began his sexual advances and she snubbed him, she was subjected to unfavorable treatment by him. For instance, she alleges that shortly after Dove's conduct began, he scheduled her to work on weekends when she was entitled to have these days off. Based on DiLaurenzio's allegations, a rational jury could conclude that Dove invoked his supervisory authority to retaliate against DiLaurenzio because she would not join in his lewd conversations or succumb to his sexual advances and then used his authority to threaten harm if she pursued a harassment claim against him. If proved, these facts could sustain a hostile work environment claim. *See id.* at 779 (where a supervisor capitalizes upon his authority to alter the employee's work schedule, give promotions and raises, and fire employees in order to force the employee to endure a sexual relationship, the supervisor has abused that delegated authority).

Because Atlantic has failed to show that there is no genuine issue of material fact as to whether Dove's conduct can be imputed to Atlantic, its motion for summary judgment on this ground is denied.

### CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is denied.

So Ordered.