**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARY ANN ROCHA VIGIL,

      Plaintiff-Appellant,

v.

CITY OF LAS CRUCES,

      Defendant-Appellee.

No. 96-2059

---

ORDER
Filed July 24, 1997

---

Before **ANDERSON**, **TACHA**, and **BALDOCK**, Circuit Judges.

---

The petition for rehearing is denied by the panel of judges who decided the case on the ground that the petition was not timely filed. A member of the active court sua sponte called for a poll of the court to determine whether the court would rehear the case en banc. Judges Seymour, Ebel, and Lucero voted to grant rehearing en banc. All other active members of the court voted to deny rehearing en banc. The petition for rehearing is therefore denied.

                                     Entered for the Court
                                     PATRICK FISHER, Clerk of Court


                                    by:
                                        Deputy Clerk

**No. 96-2059, Vigil v. City of Las Cruces**

**PORFILIO, Circuit Judge**


Because I find no precedence for the publication of an order denying rehearing and rehearing en banc, I have no idea what to label this missive. Nonetheless, an issue has been made over the denial of rehearing en banc, and I am stirred to state for the record the reason why I have voted to deny. I hope in so doing I do not create a custom for this court, because there already being enough judicial verbiage in print to confound practioners, I find opprobrious this whole notion of publishing non-precedential matters.

Lest there be a misapprehension, my vote has absolutely nothing to do with the merits of the case. Guided by what I believe are the controlling principles of Fed. R. App. P. 35(a), I simply do not believe the appeal over which this controversy has arisen is appropriate for en banc consideration.

I take to heart those portions of Rule 35(a) which say rehearing en banc is "not favored" and will not be ordered unless the case involves a "question of exceptional importance." Recalling that the disposition of this matter was by an unpublished order and judgment, indicating a panel determination the case has no value as precedent, 10th Cir. R. 36.1, and rendering the decision virtually uncitable, 10th Cir. R. 36.3, I believe the panel decision presents no question of exceptional importance. What the panel determined makes no impact upon the

jurisprudence of this circuit; therefore, it has no value except to the parties themselves. Accordingly, in my opinion the proceeding does not reach the high standard for en banc rehearing required by Rule 35(a). I have never voted to grant rehearing en banc in such a case, and I find nothing about this one to change my practice.

**PUBLISH**

96-2059, Rocha Vigil v. City of Las Cruces

LUCERO, Circuit Judge, Dissenting

In an unpublished order, a panel of this court recently decided that a pro se plaintiff's allegations of racial and sexual harassment are insufficient to resist summary judgment under Title VII. Vigil v. City of Las Cruces, No. 96-2059, 1997 WL 265095 (10th Cir. May 20, 1997). Mary Ann Vigil claims that when working as a department clerk typist at the Las Cruces International Airport, her supervisor "frequently" referred to Hispanics as "wetbacks," and, in response to complaints that Hispanic customers were overcharged, stated, "I didn't know that Mexicans had rights." She further claims that this same supervisor offered her pornographic software, left pornographic photographs in her desk, and "constantly" requested that she accompany him flying despite her repeated statements that she was not interested in doing so. Assuming the truth of these contentions, Ms. Vigil has presented an adequate case of a racially and sexually hostile work environment, as defined by the Supreme Court in Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986), and Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

In ruling against Ms. Vigil's racial harassment claim, the panel relies on Hicks v. Gates Rubber Co., 833 F.2d 1406 (10th Cir. 1987), which states:

> It is well established that a working environment dominated by racial slurs constitutes a violation of Title VII. To establish a racially hostile work environment, however, plaintiffs must prove more than a few isolated incidents of racial enmity. Casual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to the statute. Instead, there must be a steady barrage of opprobrious racial comment. Title VII is violated only where the work environment is so heavily polluted with discrimination as to destroy the emotional and psychological stability of the minority employee.

Id. at 1412-13 (internal quotations and citations omitted). In light of Meritor and Harris, the panel errs in relying on Hicks. I have therefore requested the court to reconsider en banc the current status of Hicks in Title VII hostile work environment cases and the application of a corrected standard to Ms. Vigil's racial and sexual harassment claims.[1] From the court's decision not to rehear the case en banc, I respectfully dissent.

In Meritor, the Supreme Court held that Title VII is violated where harassment is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." 477 U.S. at 67 (quotation omitted) (alteration in original). Subsequently, the Court stressed

---

[1] The panel does not formally rely on Hicks in affirming summary judgment against Ms. Vigil on her sexual harassment claim. However, the panel does rely on Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1175 (10th Cir.1996), for the proposition that "[c]asual or isolated manifestations of discriminatory conduct, such as a few sexual comments or slurs, may not support a cause of action." This erroneous conclusion rests squarely on Hicks. See Lowe, 87 F.3d at 1175 (citing Hicks, 833 F.2d at 1414). Under the correct standard for actionable hostile work environment claims, as stated in Meritor and Harris, Ms. Vigil's sexual harassment suit withstands summary judgment.

that this standard does not require a plaintiff to show that the conduct complained of caused "tangible psychological injury." Harris, 510 U.S. at 21. The Harris Court was careful to note that:

> [t]he appalling conduct alleged in Meritor, and the reference in that case to environments "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers," merely present some especially egregious examples of harassment. They do not mark the boundary of what is actionable.

Id. at 22 (quoting Meritor, 477 U.S. at 66) (further quotation omitted) (emphasis added). Thus our claim in Hicks that "Title VII is violated only where the work environment is so heavily polluted with discrimination as to destroy the emotional and psychological stability of the minority employee," 833 F.2d at 1412-13 (quotation omitted), cannot stand.

Moreover, although Tenth Circuit cases subsequent to Harris have repeated the requirement of Hicks that "there must be a steady barrage of opprobrious racial comment," id., for a Title VII claim to lie, see, e.g, Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994), cert. denied, 116 S. Ct. 92 (1995), Harris must at a minimum color our interpretation of what constitutes a "barrage." A "barrage" cannot, consistent with Harris, be found to exist only in cases where the psychological well-being of a Title VII plaintiff is tangibly affected. See Harris, 510 U.S. at 22 ("So long as the environment would reasonably be perceived, and

- 3 -

is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious."). If we are to require a "barrage" at all, then we must purge the term of its historically-entrenched overtones of psychological injury.[2]

But we should go further and dispense with the requirement of a "steady barrage" altogether. The Supreme Court has made clear that racial or sexual harassment is actionable under Title VII whenever the conduct at issue is "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." Harris, 510 U.S. at 21 (emphasis added). If sufficiently severe, harassment is actionable under Title VII—regardless of its pervasiveness or frequency. See Harris, 510 U.S. at 23 (determination of objective hostility is made "by looking at all the circumstances," including "the frequency of the discriminatory conduct [and] its severity," but "no single factor is required.") (emphasis added).

---

[2]Harris does require that the victim of actionable harassment "subjectively perceive the environment to be abusive," 510 U.S. at 21, and to that extent affirms that some minimal psychological component must be alleged for a Title VII hostile work environment claim to lie. Here the appellant regarded the terms used by her supervisor as "derogatory" and amounting to "discrimination." I R, tabs 5 & 7. Given appellant's pro se status, these allegations should be construed liberally to hold that appellant has put forward facts sufficient to satisfy the subjective requirement of a hostile work environment claim.

In line with Harris, other circuits have recognized that Title VII hostile work environment plaintiffs need not prove a pattern, "steady barrage," or other minimum quantum of discriminatory conduct in order to establish actionable harassment. See Torres v. Pisano, No. 96-7939, 1997 WL 290196, *4 n.4 (2d Cir. June 3, 1997) ("Of

course, even a single episode of harassment, if severe enough, can establish a hostile work environment."); Davis v. Monsanto Chem. Co., 858 F.2d 345, 349 (6th Cir. 1988) ("[P]laintiff need not prove that the instances of alleged harassment were related in either time or type. Rather all that the victim of racial harassment need show is that the alleged conduct constituted an unreasonably abusive or offensive work-related environment or adversely affected the reasonable employee's ability to do his or her job."); Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 674 (7th Cir. 1993) ("Within the totality of circumstances, there is neither a threshold "magic number" of harassing incidents that gives rise, without more, to liability as a matter of law nor a number of incidents below which a plaintiff fails as a matter of law to state a claim.") (emphasis added); Daniels v. Essex Group, Inc., 937 F.2d 1264, 1274 n.4 (7th Cir. 1991) (recognizing that single, isolated incident of harassment can give rise to

employer liability for racial harassment under Title VII).[3]

In its continued reliance on <u>Hicks</u>, this court appears to believe that only the most egregious cases will give rise to an actionable claim of a hostile work environment under Title VII. Such a belief is entirely without foundation. As the Second Circuit has noted even since I requested an en banc rehearing in this case, <u>Harris</u> stands for a very simple and straightforward proposition: "Whenever the harassment is of such quality <u>or</u> quantity that a reasonable employee would find the conditions of her employment altered for the worse, it is actionable under Title VII, so long as the employee subjectively experienced a hostile work environment." <u>Torres</u>, 1997 WL 290196, *5 (citing <u>Harris</u>, 510 U.S. at 21) (emphasis added). To prove harassment, employees are held only to a standard of

---

[3]Those circuits that continue to insist on a quantitative requirement do so in purported reliance on the Supreme Court's admonitions in <u>Harris</u> and <u>Meritor</u> that "mere utterance of an . . . epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment to implicate Title VII." <u>Harris</u>, 510 U.S. at 21; <u>Meritor</u>, 477 U.S. at 67. <u>See, e.g.</u>, <u>Kimzey v. Walmart Stores</u>, 107 F.3d 568, 573 (8th Cir. 1996) (citing <u>Meritor</u>, 477 U.S. at 67, for the proposition that "[m]ore than a few isolated incidents are required."). Such cases fail to recognize that some epithets do far more than engender offensive feelings. As the Supreme Court recognized in <u>Harris</u>, when "discriminatory intimidation, ridicule, and insult . . . is sufficiently severe <u>or</u> pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." <u>Harris</u>, 510 U.S. at 21 (quoting <u>Meritor</u>, 477 U.S. at 65, 67) (emphasis added). Thus, if "insult" is "sufficiently severe," Title VII is violated whether or not the insult "pervades" the workplace. The cautionary language of Meritor does no more than point out that the single utterance of a term that engenders offensive feelings cannot substantiate a hostile work environment claim. That does not mean that severely degrading, racially derogatory insult of the worst kind escapes actionability under Title VII simply because it is used only occasionally.

reasonableness.  Id.  That standard is designed to protect the individual employee's statutory right to work in an environment free from racial and sexual abuse.  It is not intended to legitimate the discriminatory practices of a majoritarian culture.  See id. at *5 n.7 ("What is, is not always what is right, and reasonable people can take justifiable offense at comments that the vulgar among us, even if they are a majority, would consider acceptable."); King v. Hillen, 21 F.3d 1572, 1582 (Fed. Cir. 1994) ("The purpose of Title VII is not to import into the workplace the prejudices of the community, but through law to liberate the workplace from the demeaning influence of discrimination."); Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991) (harassment should be analyzed from the perspective of the victim else "[h]arassers could continue to harass merely because a particular discriminatory practice was common") (citing EEOC Compliance Manual (CCH) § 615, ¶ 3112, C at 3242 (1988) (courts "should consider the victim's perspective and not stereotyped notions of acceptable behavior.")); see also Winsor v. Hinkley Dodge, Inc., 79 F.3d 996, 1001 (10th Cir. 1996) ("Just as we would not sanction an industry term that is facially derogatory to a particular racial or ethnic group, we cannot accept the argument that industry use of an inherently sex-related term neutralizes its detrimental effect on women.").

In affirming summary judgment for the City of Las Cruces, the panel holds that it is per se unreasonable for a Hispanic worker to consider what she describes as her supervisor's "frequent" references to "wetbacks" as being hostile or abusive. I am disappointed that the panel reaches that conclusion; more importantly, I can see no legal or factual basis to support it. Cf. Rodgers, 12 F.3d at 675 ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates.") (citations omitted); see also Winsor, 79 F.3d at 1000 (recognizing that sexual epithets are intensely degrading to women); Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463 (9th Cir. 1994) (derogatory use of sexually explicit and offensive terms, such as "dumb-fucking broad," sufficient to establish actionable hostile work environment claim), cert. denied, 513 U.S. 1082 (1995); id. at 1464 (use of term "UFOs—ugly fucking orientals" to refer to Asians sufficient to state actionable racial harassment claim); Boutros v. Canton Regional Transit Auth., 997 F.2d 198, 202-204 (6th Cir. 1993) (allegations that supervisors repeatedly referred to Syrian-born bus driver as "camel jockey," "camel rider," "rug peddler," "heeb," and instructed him to depart from standard bus routes, then disciplined him for doing so, sufficient to state Title VII hostile work environment claim); Burns v. McGregor Elec. Indus., Inc., 989 F.2d 959,

964 (8th Cir. 1993) (obscene name-calling constitutes harassment based on sex); Erebia v. Chrysler Plastic Prods. Corp., 772 F.2d 1250, 1256 (6th Cir. 1985) ("repeated" use of racial slurs against Mexican-American sufficient to support hostile work environment claim under Title VII standards).

The term "wetback" is severely degrading. See Katz v. Dole, 709 F.2d 251, 254 (4th Cir. 1983) (degrading epithets "deriv[e] their power to wound not only from their meaning but also from the disgust and violence they express phonetically") (quotation omitted). Accordingly, its use hardly needs to be pervasive for a Hispanic employee to find her work environment hostile and abusive—and reasonably so. See Rodgers, 12 F.3d at 675-76 (use of term "nigger" twice by supervisor, in conjunction with three other racially-motivated statements, sufficient to satisfy "objective prong of the test for Title VII racial harassment claims."); cf. Ellison, 924 F.2d at 878 ("[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct."); EEOC Compliance Manual, § 615. ¶ 3112, C at 3243 (CCH) (same); Bolden, 43 F.3d at 551-52 ("infrequent" racial slurs and jokes by coworkers insufficient to defeat summary judgment). While Ms. Vigil's pro se allegations that the term was used "frequently" are understandably not a model of specificity or legal draftsmanship, I cannot see how the panel is able to construe those allegations to mean that the term may have

been used so _infrequently_ as to preclude Ms. Vigil's subjective perceptions of a hostile work environment from being objectively reasonable.[4]  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (summary judgment only appropriate where non-movant "fails to make a _showing sufficient_ to establish the existence of an element essential to [her] case") (emphasis added).  Her relative lack of evidence as to specific individual incidents of harassment may make a jury less likely to find her work environment objectively hostile, but that does not justify summary judgment for the defendant on grounds that her allegations of "frequent" usage are too conclusory.  See Torres, 1997 WL 290196, at *4 ("If a jury were to credit [the] general allegations of constant abuse, . . . it could reasonably find pervasive

---

[4]Ms. Vigil's allegations do not make clear which Hispanics her supervisor referred to as "wetbacks," and in particular whether these terms were specifically directed at her. That omission is immaterial.  See Hirase-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 782 (10th Cir. 1995) ("[E]vidence of a general work atmosphere, including evidence of harassment of other [minority members], may be considered in evaluating a claim."); Black v. Zaring Homes, Inc., 104 F.3d 822, 826 (6th Cir. 1997) ("[S]ex-based comments need not be directed at a plaintiff in order to constitute conduct violating Title VII."). Where a supervisor refers frequently to minority members using gross racial slurs, a fellow minority member working under that supervisor and directly exposed to his abuse would be entirely reasonable were he or she to take such comments "personally."  I note in this context that we have already held that "even a woman who was never herself the object of sexual harassment might have a Title VII claim if she were forced to work in an atmosphere where such harassment was pervasive."  Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1385 (10th Cir. 1991); see also Rogers v. EEOC, 454 F.2d 234, 238-39  (5th Cir. 1971) (racially discriminatory treatment of patients may give rise to Title VII claim by worker).  The Supreme Court has held that where "the _workplace_ is permeated with discriminatory . . . insult that is sufficiently severe or pervasive to . . . create an abusive working environment, Title VII is violated."  Harris, 510 U.S. at 21 (emphasis added) (internal quotations and citations omitted).

harassment, even in the absence of specific details about each incident."); <u>Fernot</u> <u>v. Crafts Inn, Inc.</u>, 895 F. Supp. 668, 677 (D. Vt. 1995) ("The fact that the testimony indicated that [the supervisor] was 'always' making sexual remarks and regularly leered [at the plaintiff], rather than giving specific dates, does not negate its role in establishing a work environment of sufficiently pervasive sexual harassment."); <u>see also</u> <u>DiLaurenzio v. Atlantic Paratrans, Inc.</u>, 926 F. Supp. 310, 314 (E.D.N.Y. 1996) (pervasiveness of harassing conduct "is the sort of issue that is often not susceptible of summary resolution."). The bottom line is that appellant's racial harassment claim is far more specific than it is conclusory. We have the what, the where, the why, and a <u>solid enough</u> idea of the how often.[5]

Ms. Vigil's sex-based claim is also actionable. She alleges she was subjected to constant unwelcome invitations, and exposed to pornographic, sexually explicit pictures, and sexual jokes by her immediate supervisor and other

---

[5]At the very least, if courts are to grant summary judgment against pro se litigants on the basis of such nuanced formalisms, they should take care to inform non-movants of their evidentiary burden under Fed. R. Civ. Proc. 56(e). <u>See</u> <u>Timms v. Frank</u>, 953 F.2d 281, 285 (7th Cir. 1993) (all pro se litigants entitled to notice of R. 56 evidentiary requirements); <u>cf.</u> <u>Jaxon v. Circle K. Corp.</u>, 773 F.2d 1138, 1140 (10th Cir. 1985) (allowing pro se litigant "a meaningful opportunity to remedy the obvious defects in . . . summary judgment materials," and instructing district courts to "take care to insure that pro se litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings"). All the indications are that Ms. Vigil failed to translate widely-used and commonly-understood terms like "frequently" and "constantly" into precise, specific numerical equivalents because she had no knowledge of any evidentiary need to do so.

airport workers. More specifically, she alleges that her supervisor regularly requested that she go flying with him, and that when she first arrived at her job, she found pornography in a manilla folder in her desk drawer. When asked about the pornography, her supervisor stated that it had belonged to the desk's previous occupant. Another employee, however, indicated that the supervisor had given it to that previous occupant. Ms. Vigil also alleges that her supervisor offered her pornographic and "X-rated" software.

"Sexual harassment is behavior that would not occur but for the sex of the employee . . . ." Winsor, 79 F.3d at 1000 (quotation omitted). From her testimony, it is obvious Ms. Vigil perceived her supervisor's invitations to be of a sexual character. Given that her would-be host allegedly offered pornographic material to appellant and may have lied about providing such material to a previous female employee, I cannot say her perception was unreasonable. We should therefore assume for summary judgment purposes that her supervisor's invitations were on account of her sex. See id. at 1000-01.

Moreover, I see no basis to conclude that her supervisor's invitations could not amount to an objectively "intimidating, hostile, or offensive working environment." Hirase-Doi, 61 F.3d at 782 (quotation omitted). Considering the record as a whole and the totality of circumstances, including the nature of the sexual advances and the context in which they occurred, see Gross v. Burggraf

- 12 -

<u>Constr. Co.</u>, 53 F.3d 1531, 1537 (10th Cir. 1995), appellant has alleged harassment severe or pervasive enough to constitute an objectively hostile work environment.  Appellant's male supervisor constantly invited her flying despite her frequent disclaimers of interest in flying.  He allegedly offered her pornographic materials and may have lied to her about his provision of similar materials to a previous female employee.  Reasonable minds may differ in analyzing the sum of these facts.  Ultimately, therefore, the question of whether the supervisor's sexual behavior was abusive or merely offensive should also have been left to a jury.

The test established by the Supreme Court for actionable harassment looks to "all the circumstances" of the harassment, including a number of factors that contribute to abusiveness, none of which is required or determinative.  <u>Harris</u>, 510 U.S. at 23.  As Justice Scalia has recognized, "objective abusiveness" is therefore an inherently "vague" standard that provides few parameters for juries to decide when legal harm has been suffered.  <u>Harris</u>, 510 U.S. at 24 (Scalia, J., concurring).  But, as Justice Scalia notes, there is "no test more faithful to the inherently vague statutory language," of Title VII.  <u>Id.</u> at 25.  Today, this court continues to put forward a standard for actionable harassment that is far more specific: severely degrading racist epithets must "barrage" a plaintiff before she may have recourse to the protections of federal law.  In so doing, we ignore the

Supreme Court's faithfulness to the language of Title VII.  Our reliance on <u>Hicks</u> contravenes the spirit and the letter of the Supreme Court's considered jurisprudence on hostile work environment claims.  I respectfully dissent from my colleagues' refusal to correct this misplaced reliance.