**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 11 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PATRICK H. ALOIA,

      Plaintiff-Appellant,

v.

EASTMAN KODAK COMPANY,

      Defendant-Appellee.

No. 96-4113
(D.C. No. 93-CV-1092)
(District of Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, Circuit Judge, **LUCERO**, Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

---

Patrick H. Aloia ("Aloia") was hired by Eastman Kodak Company ("Kodak") on August 8, 1988, and, after training, was assigned to Kodak's Salt Lake City, Utah office as a Customer Product Sales Representative. Kodak terminated Aloia's employment on April 29, 1993. On December 8, 1993, Aloia brought suit against Kodak in the United States District Court for the District of Utah, charging Kodak with breach of contract, retaliatory termination, racial discrimination, intentional inflection of emotional distress, and defamation. On January 7, 1994, Kodak filed an answer and considerable discovery

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

by both parties ensued thereafter.  On August 4, 1995, Kodak filed a motion for summary judgment on all of Aloia's five claims.  On December 18, 1995, a hearing was held on Kodak's motion and on December 29, 1995, the district court granted Kodak's motion. On May 22, 1996, the district court entered a formal order granting summary judgment in favor of Kodak and against Aloia on all of his claims.  Aloia appeals.  We affirm.

In his complaint, Aloia described himself as being "a person of Hawaiian/Pacific Island parentage and ancestry."  In this connection, Aloia in his deposition stated that he was born in the United States, as were his parents, and that his mother was of Irish ancestry and his father of Italian ancestry.  Further, according to Aloia, his paternal grandmother was Italian and his biological paternal grandfather was of Portuguese and Polynesian ancestry.

As indicated, Aloia asserted five claims for relief.  His first claim for relief was a state claim for breach of contract.  Aloia alleged that under the terms and conditions set out in Kodak's employee handbooks, Kodak breached its contractual obligation to him by terminating his employment "without just cause" for which he sought damages in an amount not less than $85,000.00.

In a second claim for relief Aloia alleged that Kodak's termination of his employment was "wrongful, tortious and retaliatory," for which he sought damages in an amount not less than $85,000.00, as well as exemplary damages in an unspecified amount.

In a third claim Aloia alleged that in terminating his employment Kodak was "motivated by reasons of race and national origin" in violation of Title VII, 42 U.S.C. § 2000e-2(a) for which he sought damages in an unspecified amount.

Aloia's fourth claim for relief was based on a claim of intentional infliction of emotional distress by "subjecting him to racial slurs and insults, and by terminating his employment without just cause . . ." for which he asked for damages in an unspecified amount.

In his fifth, and last, claim, Aloia alleged that Kodak had later defamed him to representatives of Liberty Mutual Insurance Company causing him monetary damages in an unspecified amount for which he also asked for exemplary damages.

As indicated, there was extensive discovery by both parties. Aloia's deposition taken by Kodak is in the record before us and constitutes over 500 typewritten pages. And the deposition taken by Aloia of Kevin Riley, the Kodak employee who fired Aloia, extends for around 400 typewritten pages.

In its motion for summary judgment, Kodak asserted that discovery had clearly indicated that Aloia's employment with Kodak was "at will" employment and that there was no wrongful or retaliatory discharge. As concerns Aloia's Title VII claim, Kodak alleged that discovery showed that Aloia did not have "sufficient evidence to state a prima facie case of discrimination" based on racial or national origin and that dismissal was also warranted because Aloia admitted in his deposition that "he was not subjected to

severe and pervasive harassment which unreasonably interfered with his job performance."

Further, Kodak alleged, *inter alia,* in its motion for summary judgment that there was simply "no evidence of extreme and outrageous conduct by Kodak" and, also, that Kodak did not, in fact, publish any "defamatory, unprivileged communication about Aloia." Therefore, according to counsel, summary judgment for Kodak on Aloia's fourth and fifth claims was also warranted.

In granting Kodak's motion for summary judgment, the district court held that the discovery indicated quite clearly that Aloia's employment with Kodak was at-will and had not changed by company handbooks and employee practices. Similarly, the district court held that discovery showed that Aloia's termination was not a "retaliatory discharge."

As concerns Aloia's Title VII claim, the district court, based on the deposition of Aloia, held that any racial slurs by co-workers, such as calling him, for example, "coconut head," were isolated, not pervasive and did not in any wise result in changing the "terms, conditions, or privileges" of Aloia's employment.

In like fashion, the district court held the various depositions failed "to demonstrate any intentional or reckless conduct by Kodak or its employees that would constitute conduct so outrageous as to satisfy the requirements of a claim of intentional infliction of emotional distress."

In granting summary judgment for Kodak on Aloia's claim based on alleged defamation, the district court described that particular claim as follows:

> In his Memorandum in Opposition, Aloia generally and briefly refers to damages that he suffered [as] a result of being unable to talk to personnel at Liberty Mutual as a sales representative for his subsequent employer. Aloia does not give any specific information concerning these alleged damages of a lost sale. This court considers that these damages are too vague to constitute "special damages."

*Aloia v. Eastman Kodak Company,* No. 93-C-1092G, n.5 (D. Utah Dec.29, 1995).

In granting summary judgment for Kodak on Aloia's claim based on defamation, the district court noted that Kodak employees had, themselves, made no representations, as such, to the receptionist at Liberty Mutual, which company had offices on the same floor as did Kodak, and that the statement complained of, namely that Kodak employees had told the office manager of Liberty Mutual that Aloia was no longer an employee of Kodak,[1] was not actionable.

On appeal, Aloia abandons his claim of retaliatory discharge based on a recent decision of the Utah Supreme Court. *See Fox v. MCI Communications Corp.,* 931 P.2d 857 (Utah 1997). However, Aloia does contend that the district court erred in granting Kodak summary judgment on his other four claims, and that those claims should have been resolved by a jury, and not a judge.

---

[1]The office manager of Liberty Mutual, thereafter, in the presence of Kodak employees, instructed his receptionist that she should call the police if she saw Aloia loitering around their premises.

Of Aloia's five claims for relief, only one was a claim based on federal law, the other four being claims based on Utah law. As indicated, Aloia's third claim was a Title VII claim of racial harassment in the work place. In granting summary judgment the district court relied primarily on *Bolden v. PRC, Inc.,* 43 F.3d 545 (10th Cir. 1994) *cert. denied,* 116 S.Ct. 92 (1995). In *Bolden*, we spoke as follows:

> For Mr. Bolden's harassment claim to survive summary judgment, his facts must support the inference of a racially hostile environment, and support a basis for liability. Specifically, it must be shown that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus. General harassment if not racial or sexual is not actionable. The plaintiff must show " 'more than a few isolated incidents of racial enmity.' " Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. (Citations omitted.)

*Id*. at 550.

As indicated, in granting summary judgment on Aloia's claim of racial harassment, the district court, citing *Bolden,* held that the epithets directed to Aloia, such as "coconut head," the "throwin' Samoan," "Aloha," "Island Boy," and the like, were "occasional" and not pervasive, and that, in any event, the terms and conditions of his employment with Kodak were not in any wise altered by such name calling. In his deposition, Aloia said that any name calling by his co-workers did not interfere with his job performance, that he did a good job for Kodak, and "enjoyed the hell out of his job with Kodak. It was a great job."

On appeal, counsel does not challenge our pronouncements in *Bolden,* but tries to distinguish the present case from *Bolden.* We believe the present case is governed by *Bolden.* *Bolden*, incidentally was also a summary judgment case, and the racial slurs here involved seem to us to be more grievous than the ones described by Aloia. And as counsel concedes in his reply brief, Aloia's termination "was not motivated by racial bias," notwithstanding the fact that in his complaint Aloia alleged that he was terminated "by reasons of race and national origin." The fact that it is now conceded that Aloia's termination was not the result of race or national origin takes much of the steam out of his Title VII claim. In any event, all things considered, the district court did not err in granting summary judgment for Kodak on Aloia's claim of racial harassment.

The remaining four claims were based on Utah law. As indicated, Aloia does not pursue on appeal his second claim for relief based on wrongful and retaliatory discharge. He does pursue on appeal the district court's summary judgment on his claims of breach of contract, intentional infliction of emotional distress, and defamation. Before discussing each of those claims, brief discussion of Aloia's employment history with Kodak is helpful.

Aloia worked as a sales representative with Kodak from 1988 until his termination on April 29, 1993. Although there were occasional complaints about Aloia from customers and co-workers along the way, he apparently was a good salesman and his record of sales was good. As indicated, Aloia did have some "run-ins" along the road, he,

at times, evidencing a rather short temper and was "confrontational" with co-workers and others.  In this connection, Aloia had been given several warnings about his conduct.

The straw that broke the camel's back occurred on April 6, 1993, after a sales meeting which took place in Salt Lake City.  Stanley Sukalski, a co-worker at Kodak in Salt Lake City, was 20 minutes late for the meeting, which, for some reason, extremely irritated Aloia, who was also attending the meeting.  At the conclusion of the meeting, Aloia confronted Sukalski and publicly berated him, at length.  Various obscenities were used, Aloia calling Sukalski, *inter alia,* an ignorant SOB.  Aloia, in his deposition, denied calling Sukalski a "dumb Polack," although Sukalski, when deposed, testified that Aloia had, indeed, called him a "dumb Polack," more than once.  This confrontation resumed in the hallway outside Kodak's offices within earshot of Liberty Mutual, which had offices on the same floor as Kodak.  Later, Aloia and Sukalski figuratively  "shook hands" and agreed to drop the matter.  However, Kodak later took statements from its employees, and conferred with both Aloia and Sukalski.  The upshot of all this was that Kodak terminated Aloia on April 29, 1993.

After terminating Aloia's employment, Kodak employees went across the hallway and talked with the office manager of Liberty Mutual in his private office.  The purpose of this was to apologize for Aloia's conduct and to inform Liberty Mutual that Aloia was no longer employed by Kodak.  The office manager of Liberty Mutual then left his office and instructed his receptionist, in the presence of Kodak employees, that Aloia had been

fired by Kodak and that if she saw Aloia around Liberty Mutual she should "call the police."

As stated, the district court granted summary judgment on all of Aloia's state claims. Specifically, the district court held that Aloia's employment with Kodak was at all times an at-will employment and such was not altered by handbooks or company practice regarding "progressive discipline." Further, the district court concluded that there was no showing by Aloia of any such outrageous conduct on the part of Kodak as would indicate intentional infliction of emotional distress. Finally, the district court concluded that Kodak had not defamed Aloia, that the statements of Liberty Mutual's office manager to his receptionist were not attributable to Kodak, and, in any event, under Utah law were not defamation *per se.* In addition, the district court held that there was nothing to indicate that Aloia sustained any damage by the remarks of Liberty Mutual's office manager to his receptionist.

In short, we are in accord with the result reached by the district court and are in substantial agreement with its reasoning. And we are not inclined to disturb its understanding of local Utah law.

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

96-4113, Aloia v. Eastman Kodak Company

**LUCERO**, Circuit Judge, concurring.

I respectfully concur in the result reached by the court. I differ with the panel's reliance on that portion of Bolden v PRC, Inc., 43 F.3d 545, 550 (10th Cir. 1994) that requires a hostile work environment plaintiff to show a "steady barrage of opprobrious racial comments." For the reasons stated in my dissent in Vigil v. Las Cruces, 119 F.3d 871, 871-76 (10th Cir. 1997), I believe the "steady barrage" requirement is inconsistent with the Supreme Court's jurisprudence on hostile work environment claims.

Although Aloia himself does not take issue with Bolden, I would nonetheless follow the Supreme Court's direction that whenever discriminatory conduct is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive environment, Title VII is violated." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (emphasis added). Under that Harris standard, I agree that Aloia cannot demonstrate a racially hostile work environment, and that summary judgment was therefore appropriately granted the defendant.