Melvin v. Vercelli's, Inc.          CV-97-104-SD   07/23/98
                  UNITED STATES DISTRICT COURT FOR THE

                        DISTRICT OF NEW HAMPSHIRE


Willie Melvin

      v.                              Civil No. 97-104-SD

Vercelli's, Inc.


                              O R D E R

      In this civil action, plaintiff Willie Melvin alleges

federal claims of race discrimination under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e.  Specifically,

Melvin contends that (1) he received unequal pay because of his

race, (2) he was subjected to a racially hostile work

environment, and (3) he was constructively discharged (Count I).

In addition to his federal claims, Melvin alleges a state law

claim of wrongful discharge (Count II).

      Presently before the court is defendant's motion for summary

judgment pursuant to Rule 56, Fed. R. Civ. P., to which plaintiff

objects.

                            Background

      Defendant Vercelli's hired plaintiff, a 38-year-old black

male, in July 1992 through the New Hampshire State Prison work

release program.  Vercelli's owner/manager, Randy Jones, knew at

the time of hiring that Melvin was a convicted felon.  Melvin

worked at Vercelli's from July 1992 until February 1996.  After

starting at a pay rate of $4.50 per hour, Melvin received six pay

increases, reaching $9.50 per hour by the termination of his employment in February 1996.

Melvin alleges that he was paid less than his white co-workers who performed similar work. For example, Melvin contends that as a cook he was paid $9.50 per hour, while other employees with that title were paid $10.00 to $12.50 per hour. Melvin also contends that he performed the same duties and had the same responsibilities as the head chef, yet he was paid a significantly lower wage.

Melvin further alleges that Jones racially harassed him on at least four occasions. The harassment included comments made to plaintiff's wife, who is white. Jones allegedly said to her, "I wonder what color the baby's going to be, white with black spots or black with white stripes." Further, Melvin alleges that Jones called him a "black nigger," and told another employee, in reference to Melvin, that he was going to "chew his black ass out." Plaintiff also alleges that Jones yelled at, intimidated, and humiliated him on a regular basis. Plaintiff claims that as a result of the environment created by Jones, he had no choice but to terminate his employment.

## Discussion

### 1. Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56 (c), Fed. R. Civ. P.;

2

Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). The court's function at this stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Stone & Michaud Ins. v. Bank Five for Savings, 785 F. Supp 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

The moving party has the burden of establishing the lack of a genuine issue of material fact. Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986). The court views the record in the light most favorable to the non-moving party, granting all inferences in favor of the non-moving party. Caputo v. Boston Edison Co., 924 F.2d 11, 13 (1st Cir. 1991).

To survive summary judgment, the non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986), and cannot merely rely on allegations or denials within the pleadings. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994) (quoting Anderson, supra, 477 U.S. at 256). The non-moving party may not rest on allegations and hearsay, but rather the response, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed. R. Civ. P.

3

## 2. Title VII Claims

This case alleges three distinct violations of Title VII, which provides that it is "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." Melvin first alleges that Vercelli's paid him less than other, white workers for performing similar work. Melvin next alleges that Vercelli's subjected him to a racially hostile work environment. Finally, Melvin alleges that he was constructively discharged due to racially motivated harassment. Defendant moves for summary judgment on all three claims.

### a. Title VII Claim of Unequal Pay

Melvin claims that Vercelli's discriminated against him based on his race in setting his wage level. Under Title VII, a plaintiff can establish a prima facie case of discrimination by showing that he was paid lower wages than white employees performing equal work. However, the evidence establishes that Melvin was paid equal (or in some cases greater) wages than white employees performing equal work. See Hatton v. Hunt, 780 F. Supp. 1157, 1167 (W.D. Tenn. 1991).

In September 1992 Vercelli's paid Melvin $5.00 per hour as a dishwasher. Likewise, Vercelli's paid seven other dishwashers employed at that time at an hourly rate between $4.50 and $5.00. By the end of 1993, Vercelli's paid Melvin $6.50 per hour as he

4

began performing some duties of a preparation cook, but he remained primarily a dishwasher. The other dishwasher/preparation cook was paid $6.00 per hour. In 1994 Melvin became a preparation cook/junior line cook, and his salary accordingly increased from $6.50 to $8.50 per hour. During the same year, the three other junior line cooks earned between $6.00 and $7.50 per hour. By February 1996, when his employment at Vercelli's ended, Melvin was earning $9.50 per hour, which made him the highest-paid employee at Vercelli's, with the exception of supervisors David McDonald and Randall Jones, the owner/manager.

Melvin argues that during his last year at Vercelli's he performed tasks and responsibilities equal to those of Phillip Blazon, who worked at Vercelli's from February 1994 through January 1995. Further, Vercelli's paid Blazon $550 per week, and Melvin never earned more than $395 per week. However, the court finds that Blazon and Melvin did not perform equal work. For a finding of equal work, the evidence must show that the employees performed "work requiring equal skill, effort, and responsibility." Keziah v. W.M. Brown & Son, Inc., 888 F.2d 322, 324 (4th Cir. 1989). For the purposes of Title VII, "equal skill" includes such factors as "experience, training, education and ability." 45A AM. JUR. 2D § 732 (1993). Blazon came to Vercelli's with more than fifteen years' experience in the restaurant field. His experience included culinary work at Bennigan's Tavern in Florida, as well as work as a sous-chef at

5

the Ramada Inn in Concord, New Hampshire. The management tasks performed by Blazon--ordering meats, controlling the inventory of food supplies, and preparing the menu--required this culinary experience and training. In contrast, Melvin came to Vercelli's with no pervious experience or education in the culinary arts. Melvin became a preparation cook and junior line cook in 1994, giving him two years of culinary training under the tutelage of Randy Jones, Richard Dennison, and Phillip Blazon. Thus it is clear that Blazon and Melvin did not have equal skills.

For the purposes of Title VII, "equal responsibility" is primarily concerned with the "degree of accountability required in the performance of the job." 29 C.F.R. § 1620.17. In 1994 Blazon was hired to act as head chef when Randy Jones was absent. On April 4, 1994, Blazon was approved by the State Liquor Commission as the evening chef for Vercelli's. This approval is necessary for an employee who will be in charge of restaurant operations during any period of time. Any employee left in charge of a restaurant has a very high degree of accountability. In addition, Blazon's duties included ordering meats, taking inventory of food supplies, and supervising the line cooks. Ultimately, Blazon would be accountable if there was a problem in the kitchen.

On the other hand, Melvin was never approved by the State Liquor Commission and therefore could not be left in charge of the restaurant. Further, Melvin did not perform managerial duties, as there was some question as to whether he had the

knowledge or experience to perform management functions.  In his affidavit, Melvin states that he performed many tasks which Blazon did not perform.  At the same time, Blazon performed tasks which Melvin did not perform.  Thus Blazon and Melvin did not share equal responsibility and accountability.

This court therefore finds that plaintiff has not shown a violation of the standard of equal pay for equal work.  Accordingly, defendant's motion for summary judgment on the unequal pay claim is granted.

### b.  Title VII Claim of Hostile Work Environment

Melvin claims that his supervisor, Jones, harassed him on account of his race.  Title VII guarantees "employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult."  Meritor Sav. Bank v. Vincent, 477 U.S. 57, 65 (1986).  Offensive race-based conduct that is "'severe or pervasive enough to create an objectively hostile or abusive work environment,'" Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir. 1996) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)), constitutes harassment and actionable discrimination.

Courts have held that a single incident of offensive racial conduct may be sufficiently severe.  See Torres v. Pisano, 116 F.3d 625, 631 n.4 (2d Cir. 1997) ("Of course, even a single episode of harassment, if severe enough, can establish a hostile work environment."), cert. denied, 118 S. Ct. 563 (1997); Rocha

<u>Vigil v. City of Las Cruces</u>, 119 F.3d 871, 873 (10th Cir. 1997) ("If sufficiently severe, harassment is actionable under Title VII--regardless of its pervasiveness or frequency."); (<u>Daniels v. Essex Group, Inc.</u>, 937 F.2d 1264, 1274 n.4 (7th Cir. 1991) (indicating a single instance of racial harassment can establish a hostile work environment); <u>Reid v. O'Leary</u>, No. 96-401, 1996 WL 411494 (D.D.C. July 15, 1996) (holding that use of one epithet created an issue of material fact regarding whether plaintiff's work environment was hostile). This is especially true when racial epithets are used because possibly "no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor . . . ." <u>Rodgers v. Western-Southern Life Ins. Co.</u>, 12 F.3d 668, 675 (7th Cir. 1993); <u>see</u> <u>Bailey v. Binyon</u>, 583 F. Supp. 923, 927 (N.D. Ill. 1984) ("The use of the word 'nigger' automatically separates the person addressed from every non-black person; this is discrimination per se.").

In the present case, Melvin alleges that his supervisor Jones on several occasions used racial epithets in referring to Melvin, such as "black ass" and "black nigger." Thus Melvin has created a material issue of fact whether Jones' use of unmistakably racist language was severe enough to create a hostile work environment.

8

c.  Title VII Claim of Racially Motivated Constructive
Discharge

Melvin claims that Jones treated him so badly on account of his race that Melvin was forced to resign from Vercelli's.  The First Circuit has adopted an "objective standard" to determine whether an employer's actions have forced an employee to resign.  See Serrano-Cruz v. DRI Puerto Rico, Inc., 109 F.3d 23, 26 (1st Cir. 1997); Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 561 (1st Cir. 1986).  Constructive discharge occurs when continuing employment "will result in work so arduous or unappealing, or working conditions so intolerable, that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities."  Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 480 (1st Cir. 1993.  See Calhoun, supra, 798 F.2d at 561; Alicea Rosada v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir. 1977).

A plaintiff alleging constructive discharge must show "'"aggravating factors," such as a "continuous pattern of discriminatory treatment."'"  Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir. 1987) (quoting Satterwhite v. Smith, 744 F.2d 1380, 1381 (9th Cir. 1984) (quoting Clark v. Marsh, 665 F.2d 1168, 1174 (D.C. Cir. 1981))).  The determination as to whether conditions were so intolerable that a reasonable person would feel compelled to resign is a factual question left to the trier of fact.  Id. at 361; see Lojek v. Thomas, 716 F.2d 675, 677, 680 (9th Cir. 1983).  The same facts that support Melvin's hostile work environment claim; namely, Jones' use of racial epithets

9

directed at Melvin, also support his constructive discharge claim. Other courts have held that four incidents of discriminatory treatment over a period of two years was sufficient to create a genuine issue of material fact for trial. Id. at 361. Accordingly, defendant's motion for summary judgment on the issue of constructive discharge is denied.

3. State Law Claim of Unlawful Discharge

The First Circuit has stated that under New Hampshire law, "the existence of . . . a [statutory] remedy . . . precludes . . . a common law claim for wrongful discharge." Smith v. F.W. Morse & Co., 76 F.3d 413, 429 (1st Cir. 1996). In this case, Title VII applies and provides a remedy for plaintiff's allegations of employment discrimination based on race. This court is bound by First Circuit law and will apply its decision accordingly. Therefore, plaintiff is precluded from bringing a common law claim for unlawful discharge because Title VII provides a private cause of action to remedy the conduct of which Melvin complains. Defendant's motion for summary judgment on the state law claim of unlawful discharge is granted.

Conclusion

For the foregoing reasons, defendant's motion for summary judgment is denied in part as to Count I as it pertains to hostile work environment and constructive discharge, and granted

10

in part as to Count I as it pertains to unequal pay.  Said motion

is granted as to Count II.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

July 23, 1998
cc:  Michael J. Sheehan, Esq.
     Biron L. Bedard, Esq.